McBRIDE, Judge.
This appeal was taken under LSA-R.S. 23:1634 by several claimants for unemployment compensation from a judgment of the district court affirming an adverse ruling of the Louisiana Board of Review, Division of Employment Security, Department of Labor, State of Louisiana.
Our esteemed colleague below in his reasons for judgment correctly and in a comprehensive manner sets forth a statement of the case, the issues, the evidence and the applicable law, so we hereby adopt said reasons as the opinion of this court, viz. :
“The initial determination by the hearing agent resulted in the disquali *903 fication of claimants for unemployment compensation benefits for the period from July 27th through July 30, 1961. On appeal, the Board of Review disqualified the claimants for the period beginning July 27, 1961 and ending on September 21, 1961. The determination of disqualification was based on the fact that the claimants, during said period, were unemployed due to a labor dispute actively in progress, in which they were both participating and interested.
“The facts, briefly, are as follows:
“Claimants are members of Local #591 United Packing House, Food and Allied Workers, A.F.L.-C.I.O., which said union had executed a collective bargaining agreement with the employer-respondent, Gulf-Atlantic Warehouse Company, covering the period October 31, 1958 to July 25, 1961, with an automatic renewal clause in the absence of action by either party.
“Pursuant to the terms of the agreement, the union, on May 15, 1961, served written notice on the company that it intended to open discussion on certain phases of the contract. The company replied to said demand by cancelling the contract, which it had the right to do. The position of the company being that, unless such action were taken, bargaining could only be conducted on the union’s demands, thus placing the employer at a disadvantage.
“Upon the expiration of the contract of July 25, 1961, the employees went on a wildcat strike, which the employees contend was terminated on July 31, 1961 when they reported for work. Plaintiffs concede unemployment benefits are not due during the period of the wildcat strike.
“The claimants’ position is that the wildcat strike terminated and they reported for work on July 31, 1961, but, in effect, were locked out. The company’s position is that, without a contract and adequate written guarantee not to strike, the company was unable to resume operation until a new contract was executed. The company contends that without the protection of a contract, a strike would prevent .it from completing services which it would contract to perform for its customers.
“A contract was entered into, after negotiations, on September 21, 1961.
“The Board of Review concluded that the claimants’ unemployment was due to a labor dispute in which they were both participating and interested and that the labor dispute remained in effect until the contract was finally negotiated and accepted by both parties.
“The function of this Court, in a judicial review, is to determine whether or not the facts found are supported by the evidence, and, to review questions of law presented on appeal. The Administrator correctly states the law of this case, which is as follows :
* * * In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. No additional evidence shall be received by the court, but the court may order additional evidence to be taken before the board of review, * *.’ ” (L.S.A.-R.S. 23:1634).
“Under this provision, if the facts found by the Board are those which could reasonably be found to exist based on the evidence in the record, then the Court is without authority to substitute its judgment for that of the Board. Richardson v. Administrator, Division of Employment Security, Department of Labor [La.App.], 28 So.2d 88, Wiseman v. Brown [La.App.], 125 So.2d 657, Prenell v. Brown [La. *904 App.], 130 So.2d 520, Broussard v. Administrator, Division of Employment Security [La.App.], 121 So.2d 268, Turner v. Brown [La.App.], 134 So.2d 384, and Stroy v. Heard [La.App.], 85 So.2d 275.
“The questions presented by this appeal are: (1) the timeliness of the appeals from the original determination; (2) the admissibility of certain evidence sought to be introduced by petitioners; and (3) whether or not the facts justify the disallowance of unemployment compensation benefits by the Board of Review on the grounds that there was a labor dispute, within the meaning of L.S.A.-R.S. 23:1601(4).
“Timeliness of Appeal
“Plaintiffs contend that the time within which an appeal could be taken from the initial determination of the Appeals Referee began to run from August 4, 1961, the date of a letter written by Mr. George W. May, Director, Unemployment Insurance Section, Louisiana Division of Employment Security, to claimants’ attorney. The letter preceded a document entitled ‘Notice of Claim Determination’, which was addressed and mailed to each claimant as required by the statute. This document stated the determination of the Appeals Referee, the grounds therefor, and the time within which an appeal could be taken. This was the formal notice required by statute, upon which the statutory period for an appeal began to run, and the appeals were perfected within the delays provided by law.
“Sufficiency of evidence upon which the determination was made
“Consideration of the sufficiency of the evidence necessarily entails the admissibility of certain evidence sought to be adduced by claimants.
“Claimants complain that the Board of Review was in error in not requiring certain books and records to be produced by the employer. The purpose of the production of these documents was to establish that, due to the seasonal nature of the employer’s business, the employer refused to rehire the claimants, not on the basis of a labor dispute but because there was a lack of work.
“It is unquestioned that when the employees went on strike they were not entitled to unemployment compensation benefits. Plaintiffs concede the law was not intended to finance strikes or labor disputes. It is the contention of the employees that, having presented themselves for work on July 31st, their unemployment thereafter resulted from the arbitrary refusal of the employer to re-employ them rather than to a labor dispute, as found by the Board of Review.
“There is sufficient evidence in the record to support the finding of the Board that the unemployment of the petitioners, until September 21, 1961, was due to a labor dispute. During this period, negotiations were being conducted which eventually resulted in a contract acceptable to the employer and the employees. The nature of the employer’s work prevented resumption of operations without a no-strike guarantee. The position of the employees is that when they offered a twenty-four (24) and then a forty-eight (48) hour strike notice, which was unacceptable to the employer, it was the duty of the employer to state a period which would be acceptable. The Court does not agree with this conclusion. The unemployment was initiated by the wildcat strike. Thereafter, negotiations were being conducted in an attempt to enter into a contract satisfactory to both employer and employees. The business of the employer was conducted by contract *905 with its customers. Uninterrupted work for periods up to thirty (30) days was necessary to fulfill such contracts. The employer would have placed itself strictly at the mercy of the union had it undertaken to contract with its customers to perform work and then been subjected to a strike, resulting in inability to perform its contracts with customers. This is particularly so, in view of the fact that the local union had authority from the parent union to strike at any time. The company was within its rights in refusing to schedule work without an acceptable no-strike guarantee. Nor does the Court find that there was any necessity for the employer to make a counter proposal. It was sufficient that the employer was willing to schedule work without a completed contract if a suitable no-strike agreement was agreed upon. The situation was created by the employees by a wildcat strike, and the burden was on them to furnish satisfactory assurance that the employer could safely schedule work.
“The most which could have been established by the evidence sought to be adduced is that it was economically advisable for the employer to shut down its plant during the period in question. If such was the fact, it was known to the employees who had worked through two (2) similar periods under contract. Both the employer and the employees agreed on the contract termination date. It is no more logical to assume that the employer took advantage of the strike than it is to assume that the employees initiated the termination for the purpose of using a slack period as grounds to support the strike with unemployment benefits.
“It is the opinion of the Court that, if the evidence sought to be adduced established beyond question that there was economic benefit to the employer in failing to schedule work during this period, those facts would have no bearing whatsoever on the correctness of the decision of the Board. The Board’s decision was predicated on the finding that a labor dispute existed in which the employees were both participating and interested. The evidence supports this conclusion.”
The judgment appealed from is affirmed.
Affirmed.