LOTTINGER, Judge.
This is an appeal by the Administrator of the Division of Employment Security from an adverse judgment rendered by the Lower Court. The proceeding initially arose out of a claim for unemployment compensation benefits filed by Joe Louis Ferguson with the Division of Employment Security, Department of Labor of the State of Louisiana.
The record discloses that on April 1, 1965, the Ironworkers Local Union went on strike against all unionized construction contractors in the Baton Rouge area. Prior to the strike Joe Louis Ferguson, hereinafter referred to as employee, was employed as a laborer with Hanndymam Homes, Inc., d/b/a Albert D. Kendrick, hereinafter referred to as contractor. By letter dated April 27, 1965, the employer advised the Louisiana Division of Employment Security, by letter, that Joe Louis Ferguson was participating in the strike and was, therefore, not entitled to unemployment compensation benefits as is provided under the Louisiana Employment Security law, R.S. 23:147l et seq. On April 29, 1965,. the employee signed a statement in which he claimed that: “The Ironworkers put up-a picket line on 4-1-65 and I couldn’t cross, it to go to work.” Under the Louisiana Employment Security law, the dispute as. to whether or not the employee was entitled to unemployment compensation benefits was investigated by an examiner of the Louisiana Division of Employment Security who disqualified the employee for the reason that he had “ * * * refused to cross a picket line to available work”. The employee filed a notice of appeal to the Appeals-Referee who reversed the decision of the-examiner and ordered that the disqualification of the employee be removed. The decision of the Appeals Referee contained' the following findings of fact and opinion:
“FINDINGS OF FACT
The claimant had worked approximately nine months for the above employer as laborer earning $2.09 an hour. He is a member of the Laborers Union Local #1177. On April 1, 1965, the iron workers and pipe fitters went on strike. When he reported for work on April 1, 1965, he was informed by the job superintendent that the job was-shut down and no work would be available until the striking crafts returned to» *829 work, as it was not possibile to continue the job without them. He was not given an opportunity of either crossing or not crossing the picket line. His union did not participate in nor were they interested in the the dispute.
OPINION
R.S. 23:1601(4) provides that a claimant may be disqualified for any week with respect to which the Administrator finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment, or other premise at which he is or was last employed; but such disqualification shall not apply if it is shown to the satisfaction of the Administrator that he is not participating in or interested in the labor dispute which caused his unemployment.
Docket #2014-AT-65
It is a fact that the iron workers and pipe fitters went on strike April 1, 196S, and established a picket line at the job that he was working on but when he reported to work he was laid off by the employer because the job was shut down as the work he was doing could not be continued without the services of the striking crafts. He was not given an opportunity of either crossing or not crossing the picket line. It is concluded that although his unemployment was brought about indirectly because of other crafts going on strike, he did not participate in nor was he interested in the dispute and he was separated under non-disqualifying circumstances.”
An appeal was then taken to the Board of Review of the Division of Employment Security and the board affirmed the decision of the Referee. In its decision, the Board of Review gave as its findings of fact and opinion as follows:
“EVIDENCE
The claimant was employed by Albert W. Kendrick, Contractor, for a period of approximately nine (9) months. He was employed in the capacity of a laborer and as such was a member of the Laborers’ Union Local #1177. Evidence indicates that the claimant appeared for work on April 1, 1965, and upon his arrival, it was found that the job superintendent had failed to appear.
OPINION
The fact that a strike involving other trades was in progress has no bearing on this case since there is no dispute of the claimant’s active participation in the strike, i.e., walk the picket lines, etc. The fact that the employer failed to man the work location with proper job supervision, as he had consistently done in the past, leads this Board to conclude that the normal assumption of the claimant, that the job was terminated, was correct. Had the employer sincerely intended to resume work, he had only to notify his employees (this claimant) to appear at the work location at a designated time. If, at that time and with all conditions remaining as indicated in the testimony, the employee refused to begin work under proper supervision of the employer, then a disqualification would have to be assessed. Under the circumstances, this Board can find no alternative other than to affirm the decision of the Appeals Referee.”
The employer took an additional appeal to the 20th Judicial District Court for the Parish of East Feliciana of the State of Louisiana, and the Court rendered a decision reversing the decision of Board of Review, holding that the employee was disqualified for benefits of this act. In so holding, the Lower Court concluded that the facts as found by the Board of Review were not supported by the evidence.
The transcript of the record of the proceedings before the Referee disclosed that the last day the employee worked prior to April 1, 1965, was during the previous week thereto. He filed his claim with the Division of Employment Security on April 13, 1965. The reason he gave for not working during the last week was that the *830 weather was inclement. On April 5 the employee claims that he reported to work, however noticed that there was a picket line set up by the Ironworkers. We find the following’ questions and answers between the Referee and the employee-claimant :
“Referee: Did anyone tell you that the job was shut down?
Claimant: No, sir.
* * * * * *
Referee: There was a picket line tip on the job?
Claimant: Yes, sir.
******
Referee: Now could you have worked had there not been a picket line up there ?
Claimant: Yes, sir, I could.
******
Referee: Did you have an opportunity to cross this picket line?
Claimant: No, sir.
******
Referee: Why?
Claimant: Well, when they have a picket line we ain’t supposed to cross it.
******
Referee: Now, did anybody tell you — • any member of your company tell you that the job was shut down?
Claimant: No, sir.
******
Referee: Had you been told prior to this that the job had been shut down?
Claimant: No, sir.
******
Referee: How did you know the job had been shut down?
Claimant: I didn’t know. I went down there to work, and we saw the picket line.”
* * * * * *
On the one occasion the employee appeared for work during the strike. He drove to the site in an automobile and testified that after waiting a few minutes and noticing the picket line they remained parked on the side of the road and then left Apparently no attempt was made by the employee to go onto the actual job site. Under the provisions of R.S. 23:1601(4) the Lower Court held that the employee had failed to adduce sufficient proof to the effect that he was not participating nor interested in the labor dispute which caused his unemployment. In so holding, the Lower Court cited Brown v. Brown, La.App., 158 So.2d 305, in which we held as follows:
“Our careful consideration of the applicable statute as a matter of first impression, impels the conclusion the clear import thereof is to place the burden of proof upon the employee seeking unemployment benefits. In effect the statute provides an individual is disqualified for benefits during any week in which his employment results from a labor dispute but such disqualification shall be ineffective and without application if it be shown he is neither participating in nor interested in the labor dispute which caused his unemployment. It would appear the legislature therefore intended disqualification to ipso facto result from unemployment caused by a labor dispute unless and until the affected employee adduced proof that he is not participating therein or interested in the outcome thereof. No other conclusion appears justiciable or logical in view of the terminology appearing in the statute. The same interpretation has been accorded similar statutes in Nebraska and Pennsylvania. See Borchman Sons v. Carpenter (1958) 166 Neb. 322, 89 N.W.2d 123; Oluschak v. Unemployment Compensation Board of Review (1960) 192 Pa.Super. 255, 159 A.2d 750.”
Thus we find that the burden of proving a lack of disqualification under the act is imposed upon the employee. It *831 is encumbent upon him to “* * * show to the satisfaction of the administrator that he is not participating in or interested in the labor dispute which caused his unemployment”. R.S. 23:1601(4).
We feel, as did the Lower Court, that the employee has failed to sustain the required burden of proof. As a matter of fact, the evidence indicates by the testimony of the employee himself that he would not have crossed the picket line to report to work under any circumstances.
For the reasons assigned, the judgment of the Lower Court disqualifying the employee from unemployment compensation benefits will be affirmed, all costs of this appeal shall be paid by defendants.
Judgment affirmed.