BOUTALL, Judge.
This is a suit involving the right of a number of employees to receive unemployment compensation benefits. Their initial claim was resisted on the ground of disqualification under R.S. 23:1601(4).[1] The Board of Review concluded that the claimants were separated from employment under nondisqualifying circumstances, through no fault of their own, and granted benefits. Judicial review was sought and in a summary judgment the trial court agreed with the Board of Review. From this adverse judgment, the employer has appealed.
At the outset it is well to note that the basic issues in this case are complicated by *529 the procedural method by which this appeal reaches us. The employer properly filed a petition for judicial review from the decision of the Board of Review for the Department of Employment Security pursuant to R.S. 23:1634 making the Administrator of the Department of Employment Security and the named employees defendants. The Administrator answered. J^ocal Union #4-447 of the International Union of Oil, Chemical and Atomic Workers, A.F.L.CIO, which represents the named employees, they being members, filed a petition for intervention on behalf of the employee claimants. • The employer then filed a motion for summary judgment alleging that the pleadings and the administrative record on file show that there is no genuine issue as to material fact, and that the employer is entitled to judgment as a matter of law. In turn, the Union filed a motion for summary judgment also alleging that from the pleadings and the entire quasi judicial record, there is no genuine issue of material fact in this case, and that as a matter of law, there should be judgment in favor of the Administrator and the named defendants affirming the decision of the Board of Review and dismissing plaintiff’s suit. These two motions for summary judgment came for trial at the same time, and the court rendered judgment dismissing the motion for summary judgment filed by the employer but maintaining the motion for summary judgment sought by the intervenor, dismissing plaintiff’s suit. The plaintiff employer has appealed that judgment to us, asking that the judgment be reversed and the claimants be disqualified from receiving benefits.
The problem that faces us is as follows. We disagree with the summary judgment rendered, both procedurally and on the law governing the merits of the claim, for reasons to be discussed hereinafter. Although we would thus reverse the summary judgment rendered, we may not reverse appellant’s motion for summary judgment which was denied and render it in favor of appellant. There are two reasons for this. The same procedural infirmity applicable to ap-pellee’s summary judgment is equally applicable to appellants. C.C.P. Art. 968 provides that no appeal lies from a refusal to grant summary judgment. With these principles in mind, we proceed to discuss both the procedural aspect of the case and the merits of the claim.
At the outset, we point out that neither counsel has argued to us, in brief or in oral argument, the question of the propriety of a summary judgment in this case, but have concerned themselves only with arguing before us those issues which come under the scope of judicial review as set out in R.S. 23:1634. From the briefs filed in the record in support of the various motions for summary judgment, as well as the reasons for judgment given by the trial judge, it appears that the motion for summary judgment was simply considered as the equivalent of the judicial review permitted under the statute. We quote the appropriate portions of the law relating to these two procedural methods:
“LSA-R.S. 23:1634 Judicial reView; procedure
* * . * * ‘ * *
“In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. No additional evidence shall be received by the court, but the court may order additional evidence to be taken before the board of review, and the board of review may, after hearing such additional evidence, modify its findings of fact or conclusions, and file such additional or modified findings and conclusions, together with a transcript of the additional record, with the court. Such proceedings shall be heard in a summary manner and shall be given precedence over all other civil cases except cases arising under the workmen’s compensation law of this state. * * *”
*530 “LSA-C.C.P. Article 966 Motion for summary judgment; procedure
* * * * * *
“ * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. As amended Acts 1966, No. 36, § 1.”
The reading of these two sections of the law clearly reveals that the judicial review requires an' examination into and evaluation of the evidence as it relates to the findings of fact by the Board of Review. On the other hand, the summary judgment procedure must be on uncontradicted fact or it may not be used as a procedural device. Yet in the case at bar both parties insist that there is no issue of fact, but submit for our consideration the entire administrative record.
That record discloses that the initial claim determination made by the claims agent, based upon the evidence before him, was that the workers were unemployed due to lack of work at the plant and are entitled to unemployment benefits. The employer then appealed to the appeals referee, who held a pre-trial conference at which stipulations were entered into, and then a hearing in which a number of witnesses appeared and testified. Based upon the evidence before him, the appeals referee was of the opinion that the circumstances posed both a question of fact and interpretation of law. He found that the facts were conclusive that the company “locked out” the Union employees because a labor agreement could not be reached between them and the employer would not permit the employees to work without a contract. He found that there was a labor dispute within the provisions of R.S. 23:1601(4) disqualifying the claimants because they were interested in the dispute.
The employees then appealed to the Board of Review and that Board reversed the finding of the appeals referee on the following basis:
“EVIDENCE
“The claimant is a member of the Oil, Chemical and Atomic Workers International Union, Local No. 4-447. On February 1, 1973, the existing contract expired at 7:00 A.M. The claimant continued to work until February S, 1973. When the men who were to work the 3:00 P.M. shift on February 5, 1973, reported for work, they found the gate locked and work not available for union members. The claimant continued to report for work each day but was unable to enter the Plant because the gate was locked and no work was available. The union representative and each individual employee received a telegram stating, in substance, that the employer was willing for them to return to work, effective March 7, 1973 at 7:00 A.M. Management’s reason for sending this telegram and making this offer was that they did not feel that they could afford to finance their own lock-out.
“OPINION
“R.S. 23:1601(4) provides that a claimant may be disqualified for any week with respect to which the Administrator finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment, or other premises, at which he is or was last employed; but such disqualification shall not apply if it is shown to the satisfaction of'the Administrator that he is not participating in or interested in the labor dispute which caused his unemployment.
“The Board of Review has carefully read all of the information presented before and at the hearing, and we fail to find where the claimant was active in a strike. The claimant was advised by his *531 supervisor that work was not available for members of the Oil, Chemical and Atomic Workers International Union. We find that the employees reported to work each day, was locked out and no work was available.
“The Unemployment Compensation Act is not intended to encourage idleness or labor disputes nor to force an employer to contribute benefits to help finance his employees’ disputes with him. Only an employee prevented from working through no act of his own should be entitled to unemployment benefits.
“It is, therefore concluded by the Board of Review that the claimant was separated from employment under non-disqualifying circumstances, through no fault of his own.”
The employer then filed a petition for judicial review in the district court but the matter procedurally came for trial on the adverse motions for summary judgment. The district judge, although ruling on these motions, used his formula for judicial review in arriving at his decision, as witness his reasons for judgment:
“Thus, the Court has 23:1601, paragraph four before it, and also the judicial review article, revised statute 23:1634.
“1634 says that upon the filing of a petition for review by the administrator or upon the service of the petition on him, the administrator shall forthwith send by registered mail to each other party to the proceeding a copy of the petition, and such mailing shall be deemed to be completed service upon all parties. In any proceeding under this section the findings of the Board of Review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive.
“Thus, the facts as stated in the opinion of the Board of Review as stated in its history, in its decision, is to be taken as conclusive.
“The jurisdiction of this Court shall be confined to questions of law.
“This Court’s understanding of its duties in a case of such is that it should only reverse or remand for further hearings if it feels that the Board of Review, as the arm of Louisiana Department of Employment Security, is in error in their conclusions of the law, guiding their decision.”
As we see the problem which thus arises, the parties to the motions for summary judgment each rely on the entire administrative record, yet the trial judge accepted only the findings of the Board of Review which he considered to be conclusive. From the outline of the administrative proceedings noted above, it appears that a resolution of the issues presented therein on summary judgment required the court to consider and evaluate all of the evidence presented in the case as well as the findings of fact upon which each of the three administrative decisions were based. However, this is beyond the scope of inquiry under the motion for summary judgment.
In numerous decisions our courts have held that summary judgment should not be used as a substitute for trial. Similarly, summary judgment procedure should be used only in those cases which clearly fall within the provisions of the Code of Civil Procedure which relate to summary judgment. See Bodcaw Co. v. Enterkin, La. App.1973, 273 So.2d 325; Glass v. Vista Shores Club, La.App.1969, 221 So.2d 304; Lake Charles Harbor and Terminal Dist. v. Farquhar, La.App.1967, 196 So.2d 847; Haspel v. Treece, La.App.1963, 150 So.2d 120. We particularly note the case of Cheramie v. Louisiana Power & Light Co., La.App. 1965, 176 So.2d 209, wherein the motion for summary judgment was referred to a trial on the merits and we held that if the motion is to be utilized it must *532 be heard and decided before trial on the merits; to use it while a jury trial is proceeding is, in effect, using it as a directed verdict. Similarly in the present case, to consider summary judgment upon the entire administrative record is to use it as an alternate decision to the decision on the merits provided by the procedure of judicial review. We see no particular benefit for such a use inasmuch as the judicial review procedure is not only summary in nature but requires preferential hearing.
Turning our- attention now away from the purely procedure issue to the factual issue, we consider that the law applicable to the factual issues presented is LSA-R.S. 23:1601(4), quoted above. This section provides that a claimant is disqualified for benefits when his unemployment is due to a labor dispute in active progress but a claimant is not disqualified if he shows he is not participating in or interested in the labor dispute.
We refer to the cases of Senegal v. Lake Charles Stevedores, Inc., 250 La. 623, 197 So.2d 648 (1967); Hanndyman Homes, Inc. v. Administrator, Division of Emp. Security, 192 So.2d 827 (La.App.1966) and Brown v. Brown, 158 So.2d 305 (La.App.1963). The import of these cases is that, once the labor dispute was established, the employee is required to affirmatively prove that he came within the exceptions to disqualification.
Under the rationale of these cases we are confronted with an inquiry into the question of whether the claimants have borne the burden of proof required. This brings us face to face with the difference between the procedural devices discussed above, because here we are required to resolve several factual issues. For example, we note the factual determination made in the case of Singleton v. Brown, 153 So.2d 902 (La.App.1963) wherein the employees, at the expiration of the contract between their union and their employer, went on a five day wildcat strike. Upon their attempt to return to work they were locked out by the company. The court denied unemployment benefits. We note in the present case that the contract ended on February 1, 1973, and on that date the gates to the plant were closed for a while and one shift did not work that day. There is a factual issue raised as to whether there was a lockout or a strike on February 1, 1973, prior to the lockout of February 5, 1973.
There is another issue raised as to whether the lockout of February 5, 1973 was because of the possibility of a strike, because of the company desire to bring pressure on its employees to accept its contract terms, because the company did not wish to become involved with negotiations with the national union which may include other factories, or because simply of lack of work in general. This issue can only be determined by evaluation of the evidence. In Chrisholm v. Stevens, 231 So.2d 640 (La.App.1970) it was stated that any doubts as to existence of a material factual issue are to be resolved against granting of summary judgment and in favor of trial on the merits. Where the facts support different conclusions which are not resolved, summary judgment is not the proper disposition of the action. It is not appropriate as a vehicle for disposition of cases requiring judicial determination of subjective facts such as motive, intent, malice, good faith or knowledge. Fontenot v. Aetna Insurance Company, 225 So.2d 648 (La.App.1969).
For the reasons above mentioned, we conclude the use of summary judgment under the conditions above expressed is improper. Without considering the merits of the claim, we ordinarily would simply set the judgment aside and remand this matter for further proceedings in the district court.
However, the entire administrative record has already been placed before that court and that court has accepted the findings of the Board of Review. The matter *533 has been argued in the district court as well as here on the scope of judicial review and the merits of the claim. Under these circumstances a remand would serve no purpose except to delay final determination of the issues between the parties. Such delay should be avoided in cases wherein the legislature provides for a preferential resolution of the issues. C.C.P. Art. 2164 provides that the appellate courts shall render any judgment which is just, legal and proper upon the record on appeal. Since both parties have submitted the same factual record, we have only to apply the law pertinent to judicial review and applicable to the merits of the claim. See, for example, Songe v. Tennessee Life Insurance Company, 260 So.2d 149 (La. App. 4th Cir. 1972).
Proceeding thus to the merits, we take note of the findings of the Board of Review and the trial judge as quoted above. We have no quarrel with the findings of fact that are set out. They are substantiated by the record. However, we do find that the statement of facts is incomplete in that certain facts which are necessary elements to a determination of the claim under the statute are not mentioned or commented upon. This situation apparently arises because of the erroneous conclusion that the statute required “fault” of the claimant for disqualification for benefits.
The first element to be considered under R.S. 23:1601(4) is whether there was a labor dispute in active progress at the factory. The Board of Review found only that the claimant was a member of the union; that the contract had expired; that the claimant was locked out, no work was available for union members, and the claimant was not active in a strike. We agree with these findings, but the statutory requirement is that there be an active labor dispute in progress, not simply a strike or lockout.
For a definition of labor dispute, we refer to the legislative definition set out in the general provisions of Chapter 8, Title 23, Revised Statutes dealing with labor organizations and labor disputes, and which we feel to be controlling here:

“R.S. 23:821 Definitions
“(3) The term ‘labor dispute’ includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the proximate relation of employer and employee.”
The record shows that the claimant is a member of the local union which had entered into a contract with the employer. The contract was due to expire at 7:00 A. M. on February 1, 1973. For more than a month prior to that date, the union and the employer had held collective bargaining meetings for the purpose of negotiating a new contract. At a union meeting in January, 1973, the union members voted to give authority to their negotiating committee to call a strike if negotiations failed and no contract agreement was reached, if it considered a strike necessary after the expiration date of the old contract, and provided the International Union granted authority. Although the request for authority was made in January, it was not granted until March 4, 1973, after a second request on that date.
The day before the expiration of the contract, January 31, 1973, the union and the employer held another bargaining session at which each made a final offer and each in turn was rejected. The next day, February 1, 1973, the union workers reported for work on the morning shift which started at 7:00 A.M., co-incident with the expiration of the contract, but found the gate locked. This was because management had instructed the security *534 guard at the gate to close the gate if it appeared some trouble may develop. None did, and after consultation between the union and employer representatives, it was agreed that the plant would reopen for the next shift and another bargaining session would be held.
This session was held on February 3, 1973, and no agreement was reached. At this meeting the employer declared that if a contract was not agreed upon by the 3 :00 P.M. shift of February 5, 1973, the company would lock the gates and refuse to let the union employees work until there was a contract agreement. The union announced that it would not agree not to strike, but assured the company that it was a responsible union and would give ample notice of a strike, providing the workers necessary to properly close down the plant operations. No agreement was reached by the deadline given, and the company closed the plant to union employees in accordance with its threat, keeping the plant in limited operation by its supervisory personnel.
These facts convince us that there was a controversy concerning terms and conditions of employment between the union and the employer and that it was in active progress at the place of employment. The failure of the parties to settle their dispute and sign a new contract (without regard to who is right or wrong) is the cause of the company locking its doors and preventing the workers from continuing to work. We conclude that this meets the test of disqualification required by the statute.
We now consider the element of participation or interest in the labor dispute.
 The Board of Review in its opinion stated that only an employee prevented from working through no act of his own should be entitled to unemployment benefits. It found that the claimant was not active in a strike and hence was separated from employment by virtue of a lockout and through no fault of his own. We are aware of the fact that the Unemployment Compensation Act is not intended to encourage idleness, but is intended to relieve a very real economic menace of workers who wish to be gainfully employed, but are unable to keep or obtain employment. In view of the policy adopted by the legislature to provide relief from such economic duress, we believe the statute should be liberally construed in favor of the employee. However, in this instance, in cases coming under R.S. 23:1601(4), we are confronted with an equally important policy of this state, that is, that the state should maintain a fair and neutral position in regard to labor disputes. In the interpretation of this section of the statute, the jurisprudence has held, and the statute appears to require, that once it is established that the labor dispute was the cause of unemployment, the employee is required to affirmatively prove that he comes within the exceptions to disqualification. The board found only that there was no fault on the employee and that the employee continued to report for work each day but was prevented from working by the lockout of the employer. As we view the statute, it is not necessary that fault be assessed on either party. We readily perceive the application of fault to disqualifications for benefits under section 1601, subsections (1), (2) and (3). In each of those situations there is a requirement of good cause or finding of misconduct, all of which to some degree embody the question of fault. But subsection 4 does not so provide. It merely says that the disqualification shall not apply if the employee is not participating in or interested in the labor dispute which caused his unemployment. For the purpose of argument, if we assume that the finding of the board that there was no fault on the employee and that he was unemployed through no act of his own is the equivalent of finding no participation, we are still left with the question of whether the employee was interested in the dispute.
In the case of Senegal v. Lake Charles Stevedores, supra, it was held that there is *535 a distinction between participation and an interest in a labor dispute, and so a nonunion worker who did not engage in a strike with the union workers, but whose wages and working conditions were affected, was determined to be disqualified because he was interested in the labor dispute. Similarly, benefits were denied a member of a non-striking union whose unemployment resulted from a strike of other unions in the case of Hanndyman Homes, Inc. v. Administrator, supra.
Again we refer to the general provisions relative to labor organizations and labor disputes, and especially R.S. 23:821(2), which states as follows:
“(2) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him and if he is engaged in the industry, trade, craft, or occupation in which such dispute occurs, or is a member, officer, or agent of any association of employers or employees engaged in such industry, trade, craft, or occupation.”
In this case, we find as did the board, that the employee was not on strike, that he applied for work every day, but work was denied him because he was locked out by the employer. However, it is admitted that he was a member of the union, and that union on his behalf, was engaged in active negotiations for his terms and conditions of employment. Although there is a difference in the factual conditions extant in the case of Singleton v. Brown, supra, and the facts of this case, in that we find there was no preliminary strike herein, we note that the basic reason for unemployment was that the employees were locked out by the company.
For the foregoing reasons, we conclude that the claimants are disqualified from unemployment benefits and the decision of the Board of Review is incorrect in its application of the law. Accordingly, it is ordered that the judgment appealed from is set aside and reversed, and there is now judgment herein in favor of National Gypsum Company against the defendants, decreeing the claimants ineligible for unemployment compensation benefits for the period involved.
Reversed and rendered.

. “R.S. 23 :1601 Disqualification for benefits.

(4) For any week with respect to which the administrator finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment, or other premises at which he is or was last employed ; but such disqualification shall not apply if it is shown to the satisfaction of the administrator that he is not participating in or interested in the labor dispute which caused his unemployment. * * * ”