510 F.2d 1196
 JOHNS-MANVILLE PRODUCTS CORPORATION,
Plaintiff-Appellant-Cross-Appellee,
v.
F. C. DOYAL, Jr., Administrator, Louisiana Department of
Employment Security, et al.,
Defendants-Appellees-Cross-Appellants,
Louisiana AFL-CIO, Intervenor-Appellee.
 No. 74--1620.
 United States Court of Appeals,
Fifth Circuit.
 April 4, 1975.
 
 David L. McComb, G. Phillip Shuler, III, New Orleans, La., John D. O'Brien, Washington, D.C., for plaintiff-appellant-cross-appellee.
 Marion Weimer, James A. Piler, La. Dept. of Employment Security, Baton Rouge, La., for F. C. Doyal, Jr.
 Victor H. Hess, Jr., Leonard A. Washofsky, New Orleans, La., for Oil, Chemical.
 C. Paul Barker, New Orleans, La., for La. AFL--CIO.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before TUTTLE, DYER and GEE, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 Despite negotiation, Johns-Manville Products Corporation, Oil, Chemical and Atomic Workers International and its Local 4--390 were unable to agree on a new collective bargaining contract covering workers at a New Orleans, Louisiana, plant after the October 12, 1973, expiration of the previous agreement. Nevertheless, the workers continued on the job after expiration of the contract until Johns-Manville closed the plant on October 31, 1973, having notified their employees that the plant would not be reopened until a new collective bargaining agreement was reached. The plant was closed due to equipment failures posing, management said, dangers to safety. Management contends that the failures were the work of union saboteurs seeking to enhance the union's bargaining position in the contract negotiations. After the plant closing, some employees applied for and were awarded unemployment compensation by the State of Louisiana, despite Johns-Manville's charge that the employees were unemployed due to a labor dispute and thus disqualified from receiving benefits under Louisiana law.[1] Johns-Manville filed suit in federal court, claiming that the Louisiana administrative orders awarding their employees unemployment compensation were preempted by federal labor law, violative of the Fourteenth Amendment and contrary to the Louisiana Employment Security Law. The court below abstained for Pullman[2] reasons.
 
 
 2
 To the contrary, Pullman does not mandate abstention in this case, one of its prerequisites being absent.[3] The Supreme Court has made it clear that invocation of Pullman is proper only when an issue of state law is uncertain. Reetz v. Bozanich, 397 U.S. 82, 86, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); Gray Line Motor Tours, Inc. v. City of New Orleans,498 F.2d 293, 298 (5th Cir. 1974); Moore's Federal Practice, 0.203 (2d ed.); C. Wright, Federal Courts § 52 (2d ed.). The statute in question is not one unconstrued by the state courts nor one which the state courts have left bare of policy guidelines. See Leiter Minerals, Inc. v. United States, 352 U.S. 220, 229, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957). As to whether unemployment is the result of a labor dispute, the Louisiana courts have applied the law to other than simple strike situations. Singleton v. Brown, 153 So.2d 902 (La.App.1963) (wildcat strike followed by company lockout due to lack of agreement on a no-strike clause); Elmer Candy Corp. v. Administrator of Employment Security, 286 So.2d 423 (La.App.1973) (use of permanent replacements for strikers, court reliance on federal labor law). Further, it has been applied in a situation where management's action could have been construed as the result of a labor dispute or the result of independent economic factors. Singleton v. Brown, supra. In addition, on remand the trial court will have the benefit of a more recent case, National Gypsum Co. v. Administrator, La. Dep't of Employment Security, 300 So.2d 527 (La.App.1974). That case adopted a broad definition of labor dispute, covering a lockout resulting from a negotiation impasse.
 
 
 3
 The question of interest in and participation in a labor dispute has been subjected to state judicial scrutiny several times. Senegal v. Lake Charles Stevedores, Inc., 197 So.2d 648 (La.1967); Elmer Candy Corp. v. Administrator of Employment Security, supra; Hanndyman Homes, Inc. v. Administrator, Div. of Employment Security of Dep't of Labor, 192 So.2d 827 (La.App.1966), writ ref'd, 250 La. 251, 195 So.2d 141 (1967); Brown v. Brown, 158 So.2d 305 (La.App.1963), writ ref'd, 245 La. 639, 160 So.2d 227 (1964), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964).
 
 
 4
 As for policy, the state supreme court has given one reason for the legislation:
 
 
 5
 The Louisiana Employment Security Law requires the employer to pay substantial sums into a fund from which unemployment compensation benefits are paid. The employee contributes nothing to this fund. Avoiding placing an employer in a position of being compelled by statute to subsidize a strike undoubtedly was one of the reasons which prompted the Legislature to disqualify those who are participating in or interested in the labor dispute, and we consider that a broad disqualification was intended by those categories.
 
 
 6
 Senegal v. Lake Charles Stevedores, Inc., supra, 197 So.2d at 650--51. Additionally, a lower state court has said: '(I)n cases coming under R.S. 23:1601(4), we are confronted with an equally important policy of this state, that is, that the state should maintain a fair and neutral position in regard to labor disputes.' National Gypsum Co. v. Administrator, La. Dep't of Employment Security, supra, 300 So.2d at 534. In short, the statute is not so ill-defined that the federal court should delay decision.
 
 
 7
 On cross-appeal, the defendants seek to support dismissal of the suit. First, they argue that California Dep't of Human Resources Development v. Java, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971), precludes the state's suspending payment of benefits without hearing once eligibility has been determined. That case does so hold; however, there is here no question of suspension of benefits pending hearing in court. At oral argument counsel revealed that the employees were no longer receiving benefits.
 
 
 8
 We decline to accept the invitation to dismiss for nonjusticiability. There are standards to determine whether federal labor law is preemptive. See Cox, Labor Law Preemption Revisited, 85 Harv.L.Rev. 1337 (1972). To the extent that the court is also required to consider national and state unemployment compensation statutes, the task is not an unfamiliar one. Courts are often called upon to resolve statutory differences. See, e.g., FPC v. Memphis Light, Gas & Water Div., 411 U.S. 458, 93 S.Ct. 1723, 36 L.Ed.2d 426 (1973). Also, fashioning a remedy is not without the competence of the court.
 
 
 9
 Finally, we decline to pass on preemption at this time. The trial court did not reach the issue on the merits; indeed, that was the reason for abstention. Feeling we could benefit from development of the record and the lower court's analysis on both the possibility of mootness[4] and, if necessary, the merits, we reverse and remand for consideration in accordance with this opinion.
 
 
 10
 Reversed and remanded.
 
 DYER, Circuit Judge (dissenting):
 
 11
 I respectfully dissent. In the circumstances of this case the district court exercised sound discretion in abstaining, and I would thus affirm.
 
 
 12
 The majority rests its decision on the clarity of state law. Finding the Louisiana law in question to be relatively clear, it holds that abstention is improper. I agree that the state law is settled, but we do not stop there; we must go on to ask whether a conflict then exists between state and federal law.
 
 
 13
 As the majority points out, the Louisiana statute, LSA--R.S. 23:1601, denies unemployment compensation benefits to those unemployed due to a labor dispute in active progress. The referee found in this case that the company shut down the plant because of 'breaks in production and fear of possible further damage to equipment and injury to workers.' Noting that the employer testified at the hearing that there was no lockout, the referee found that the unemployment was due not to a labor dispute, but to a 'layoff when the employer decided to close the plant.' Johns-Manville asserts, perhaps correctly, that the referee and subsequently the Board of Review simply refuse to recognize what is obviously a lockout, and that this refusal undermines federal labor law. Johns-Manville claims that the state administrative agency has not followed the law of its own state. Accepting Johns-Manville's characterization of the facts, the majority and I agree that the agency has not followed Louisiana law. Our disagreement centers on the proper respective roles of the federal and state courts.
 
 
 14
 The Louisiana courts have spoken frequently and decisively on the statute in question. In addition to the obvious intent of the statute that strikers be disqualified from receiving benefits, Louisiana appellate courts have held that the following are disqualified: those who refuse to cross picket lines, Hanndyman Homes, Inc. v. Administrator, Div. of Employment Security, La.App.1966, 192 So.2d 827; non-union members who will benefit from the union's representation, Brown v. Brown, La.App.1963, 158 So.2d 305, writ ref'd, 1964, 245 La. 639, 160 So.2d 227, cert. denied, 1964, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747; and even strikers who have been permanently replaced because a vestigial employer-employee relationship still exists. Elmer Candy Corp. v. Administrator of Employment Security, La.App.1973, 286 So.2d 423. They have also held that employees who went on a wildcat strike and then were locked out were disqualified, Singleton v. Brown, La.App.1963, 153 So.2d 902, and that a lockout is a 'labor dispute' within the meaning of the statute. National Gypsum Co. v. Administrator, La. Dept. of Employment Security, La.App.1974, 300 So.2d 527.
 
 
 15
 The Louisiana Supreme Court on November 22, 1974, issued a writ of review in the National Gypsum case. 303 So.2d 175. There is every reason to assume that the court will interpret the Louisiana law in a manner completely consistent with the federal law as here urged by Johns-Manville, that is, that a lockout is a labor dispute within the meaning of the statute. The Louisiana courts have consistently and for several years been construing the statute and the disqualification for 'labor disputes' broadly. They have not hesitated to apply federal labor law. Elmer Candy Corp., supra. The Louisiana Supreme Court, alluded to in the majority opinion, has recognized the unfairness of compelling an employer to subsidize a strike. Senegal v. Lake Charles Stevedores, Inc., La.1967, 197 So.2d 648; see also Brown v. Brown, supra, 158 So.2d at 309. Once the law is clear, we merely have a factual question as to whether a particular set of facts constitutes a lockout.
 
 
 16
 Hence, I agree with the majority that the state law is relatively clear, and that it has been construed by the state courts and fleshed out with policy guidelines. But I most emphatically disagree that this precludes the federal court from abstaining.
 
 
 17
 In the leading abstention case, the United States Supreme Court ordered the district court to abstain from exercising its jurisdiction in a situation where the state law was unsettled, and where resolution of that state law would avoid the constitutional question. Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. The majority here has extracted from Pullman and its progeny a rule that abstention is not proper if the state law is clear. I view this rule when applied to the circumstances of this case as antithetical to the basic rationale behind the abstention doctrine.
 
 
 18
 The majority relies on the post-Pullman cases of Harman v. Forssenius, 1965, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50, and Reetz v. Bozanich, 1970, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68, for the proposition that abstention is proper only when the state law issue is uncertain. However, closer analysis is necessary to avoid distortion in the abstention doctrine. The Supreme Court ordered abstention in Pullman because a definitive ruling by the state courts on the state law issue might altogether avoid the constitutional adjudication. The justifications for abstention are the avoidance of unnecessary or premature constitutional adjudication, a 'scrupulous regard for the rightful independence of the state governments' and the 'smooth working of the federal judiciary,' and the furtherance of 'harmonious relations between state and federal authority.' Railroad Commission of Texas v. Pullman Co., supra, 312 U.S. at 501, 61 S.Ct. at 645.
 
 
 19
 In Reetz, the Court likewise ordered abstention in a case where a state court decision 'could conceivably avoid any decision under the Fourteenth Amendment and would avoid any possible irritant in the federal-state relationship.' Reetz v. Bozanich, supra, 397 U.S. at 87, 90 S.Ct. at 790. In Harman v. Forssenius, where the Court also upheld abstention, it expanded upon the reasons for abstaining only where the issue of state law is uncertain. Abstention is appropriate.
 
 
 20
 (w)here resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law.
 
 
 21
 Id. 380 U.S. at 534, 85 S.Ct. at 1182.
 
 
 22
 The statutes in question in Harman were 'clear and unambiguous in all material respects.' The Harman Court stated that if the state statute
 
 
 23
 is not fairly subject to an interpretation which will render unnecessary . . . the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction. (Emphasis supplied).
 
 
 24
 Id. at 535, 85 S.Ct. at 1182.
 
 
 25
 The obverse is that if the state statute is fairly subject to such an interpretation, the federal court should abstain. A fortiori, if the only reasonable interpretation of the state statute is one which will avoid the federal question, as is the case here, the federal court should abstain.
 
 
 26
 Thus, a fair reading of Pullman, Reetz, and Harman reveals that abstention is proper if the state law is unclear, and if it is subject to an interpretation which would render adjudication of the federal question unnecessary. If the state law is clear and in conflict with federal law, abstention is improper because the constitutional question cannot be avoided in state litigation. But if the state law is clear and there is no conflict with federal law, abstention is entirely proper.
 
 
 27
 Here, as the majority acknowledges, the state law is settled. Furthermore, it is settled in the manner urged by the plaintiff, Johns-Manville. Absolutely nothing in the record suggests that the Louisiana courts will not enforce Louisiana law in a manner entirely consistent with prior interpretations of the Louisiana courts and thus avoid the federal question raised by Johns-Manville. The important question is not whether the state law is clear, but whether by deferring to state court adjudication, the federal question might altogether be avoided.
 
 
 28
 The First Circuit has upheld abstention when it appeared likely that the state courts would support the plaintiff's claims. A dismissed school teacher, successful in his bid for reinstatement in the initial stages of the arbitral process, feared reversal on appeal because of prior state court decisions, so he took his constitutional claim to federal court. The First Circuit approved abstention because, '(w)hile it is surely an open question, we think that there is a substantial possibility that the arbitrator's award will be upheld.' Steele v. Haley, 1 Cir. 1971, 451 F.2d 1105, 1106. See also Huffman v. Pursue, Ltd., 1975, --- U.S. ---, ---, 95 S.Ct. 1200, 1211, 43 L.Ed.2d 482. State law in this case is even clearer on the plaintiff's side, and therefore the reasons for abstention are even more compelling.
 
 
 29
 It is of course also important that federal rights not be prejudiced should the federal court abstain. The case is currently on appeal in state court where statutory preference is given to these appeals. LSA--R.S. 23:1634. Johns-Manville argues that the state remedies are inadequate to protect its federal right to free collective bargaining, largely because of the delays inherent in the state courts. Much of that argument fails when it is recognized that benefits are no longer being paid to the employees in question. Hence, even if adjudication in state court is more laborious than in federal court, as asserted by counsel, no further injury will be done to the employer should he have to proceed solely in state court. The damage allegedly done to the company's bargaining position more than a year ago cannot be rectified by either state or federal court. Furthermore, the fact that vindication of those rights will be delayed is not usually enough to prevent the federal court from abstaining. The Supreme Court has often ordered abstention in the face of such an argument. Harris County Commissioner Court v. Moore, 1975, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32; Reetz v. Bozanich, supra. Finally, although the company asserts that it cannot obtain full relief in state court, we see nothing in Louisiana law to warrant that assertion. If the company were to prevail on the merits in state court, the charges made against its 'experience-rating record' would be cancelled. LSA--R.S. 28:1532 et seq. Injunctive and declaratory relief were both available in Louisiana. Art. 3601 and Arts. 1871--1883, La.C.C.P. In short, the state remedies would seem to be entirely adequate to protect the federal right asserted.
 
 
 30
 In sum, this case presents a question similar to that faced by this Court in Simmons v. Jones, 5 Cir. 1973, 478 F.2d 321. There, it was alleged that one county in Georgia had failed in compiling its juror's list to comply with Georgia statutes. The plaintiff invoked the jurisdiction of the federal court to 'police the manner in which the defendants, officials of the State of Georgia, performed their duties to insure compliance with state law.' Id. at 327. This Court held that the district court should have abstained 'in order to avoid unnecessary friction between a state and the federal government.' Id. We relied on Alabama Public Service Commission v. Southern Railway Co., 1951, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002, in which the Supreme Court held that the railroad should have pursued its clearly delineated state remedies rather than bringing suit in federal court:
 
 
 31
 As adequate state court review of an administrative order based upon predominantly local factors is available to appellee, intervention of a federal court is not necessary for the protection of federal rights.
 
 
 32
 Id. at 349, 71 S.Ct. at 768.
 
 
 33
 Judge Simpson, speaking for this Court in Simmons, noted that Simmons' complaint was 'an effort to enlist a federal court in a campaign to achieve a more faithful application' of the Georgia statute in a single county. Johns-Manville has attempted exactly the same thing here. The remedy should be that adopted in Simmons:
 
 
 34
 We must assume that the Georgia court system is capable of enforcing Section 59--106 of the Georgia Code. As a matter of comity, the district court should have afforded the Georgia courts the opportunity to rectify alleged deviations from the requirements of Georgia law regarding the selection of traverse jurors in Long County. Sound principles of federalism dictate this result.
 
 
 35
 Simmons v. Jones, supra, 478 F.2d at 328.
 
 
 36
 We have spoken with disfavor in the past about a plaintiff attempting to
 
 
 37
 bring about that unseemly conflict between two sovereignties which the doctrines of comity and abstention are designed to avoid.
 
 
 38
 Glen Oaks Util., Inc. v. City of Houston, 5 Cir. 1960, 280 F.2d 330, 334. In such a situation, we have not hesitated to order abstention. Id. See Huffman v. Pursue Ltd., supra, --- U.S. at ---, 95 S.Ct. 1200; Romero v. Coldwell, 5 Cir. 1972, 455 F.2d 1163; Barrett v. Atlantic Richfield Co., 5 Cir. 1971, 444 F.2d 38.
 
 
 39
 The same principles should operate here. The district court abstained on the ground that if the company's contention is correct that the administrative decision was erroneous under Louisiana law, then 'a decision on the constitutional question will be rendered unnecessary.' I am firmly convinced that the district court is correct. If we are to emphasize rather than to undermine the concept of federalism this is a classic case for the application of the abstention doctrine. I would affirm.
 
 
 
 [1]
 'An individual shall be disqualified for benefits: . . . For any week with respect to which the administrator finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment, or other premises at which he is or was last employed; but such disqualification shall not apply if it is shown to the satisfaction of the administrator that he is not participating in or interested in the labor dispute which caused his unemployment.'
 LSA--R.S. 23:1601(4).
 
 
 [2]
 Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)
 
 
 [3]
 Our opinion is focused on clarity of state law; however, Johns-Manville contended that abstention was improper since the second Pullman prerequisite--a federal constitutional question--was missing. The court below did rely only on the Supremacy Clause; however, we will not speak to this point since Johns-Manville did charge due process and equal protection violations in the complaint
 
 
 [4]
 See Super Tire Eng'ring Co. v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974)