PUR (NS) 48 (1941); Re: Adams Electric Cooperative, Inc., 38 PUR (NS) 193 (1941).

Justice and the orderly processes of law demand that this issue be given the consideration it deserves. I would not expect this decision to stand in the way of such a determination when a proper case is presented.

The holding of this case, then, must be that North Terrebone Gas Processing Plant was not a customer of the Cooperative at the time when Louisiana Power and Light Company began to service the Gas Processing Plant, and, as a necessary concomitant, the record made before the Commission was made before a tribunal which at least had jurisdiction over this customer dispute.

197 So.2d 648

Clifton SENEGAL

v.

**LAKE CHARLES STEVEDORES, INC., and Administrator, Division of Employment Security, Department of Labor, State of Louisiana.**

No. 48367.

March 27, 1967.

Rehearing Denied May 1, 1967.

Kaufman, Anderson, Leithead, Scott & Boudreau, Robert J. Boudreau, Lake Charles, for defendant-applicant.

Rogers, McHale & St. Romain, Robert M. McHale, Lake Charles, for plaintiff-respondent.

Melvin L. Bellar, Marion Weimer, James A. Piper, Baton Rouge, for defendant-appellee.

HAWTHORNE, Justice.

This case, which is before us on writ of certiorari to the Court of Appeal, Third Circuit, involves the question of whether the claimant Clifton Senegal, who was unemployed because of a labor dispute, was disqualified from receiving unemployment compensation benefits under the Louisiana Employment Security Law, R.S. 23:1471 et seq. The pertinent section, R.S. 23:1601, provides in part:

"An individual shall be disqualified for benefits:

" *  *  *

"(4) For any week with respect to which the administrator finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment, or other premises at which he is or was last employed; *but such disqualification shall not apply if it is shown to the satisfaction of the administrator that he is not participating in or interested in the labor dispute which caused his unemployment.* *  *  *" (Italics ours.)

The claimant Clifton Senegal became unemployed because of a labor dispute between Lake Charles Stevedores, Inc., his employer, and the International Longshoremen's locals, which resulted in a strike at the establishment where he was employed. His claim for unemployment compensation benefits, filed with the Louisiana Division of Employment Security, was denied. In due course this decision was upheld by the Appeals Referee and by the Board of Review for the Division of Employment Security.

The Board of Review concluded unanimously that the claimant's "unemployment was caused by the labor dispute, and it certainly has not been shown that he did not participate in or was not interested in this labor dispute". The claimant then sought judicial review.

The district court affirmed the Board of Review on the ground that the claimant was disqualified from benefits because he was "interested in" the labor dispute. On appeal the Court of Appeal reversed the district court, concluding that the claimant neither participated in nor was interested in the labor dispute and therefore was entitled to compensation benefits.[1] See 188 So.2d 510. On application of the employer, Lake Charles Stevedores, Inc., a writ of certiorari was granted by this court.

On January 11, 1965, the Longshoremen's Association went on strike and set up picket lines at relator's establishment, and it became necessary for relator to cease operations completely. The primary purpose of this strike was to obtain an increase in wages, certain fringe benefits, and minimum gang sizes. The claimant, a longshoreman, had worked since 1956 for the employer, Lake Charles Stevedores, Inc., when work was available for him, and was working there when the strike was called which caused him to become unemployed. The strike lasted until March 6, 1965.

The employer did not hire any longshoremen directly, but whenever it needed labor for its operations, it called the local union and requested a specific number of crews. These crews, which might include non-union as well as union longshoremen, upon reporting to the job were put to work without question as to whether they were union or non-union men, for the employer did not differentiate between union and non-union men in regard to wages, working conditions, etc., and did not even know which of its workers belonged to the union. The union, however, in selecting crews for available work gave preference to its members over non-union workers. Thus all longshoremen, whether members of the union or not, were supplied to the employer by and through the local union, and all paid the union 5 per cent of their net earnings. As an aid to the union the employer paid wages to each longshoreman by two separate checks, one for 95 per cent of the net earnings and one for 5 per cent. The checks were distributed to all the men at the union hall or at the wharf by a member of the union, and the workers, both union and non-union, turned the 5 per cent check over to the local union. The union grievance committee han--

---

1. Judge Culpepper dissented, being of the view that the claimant was disqualified because he was interested in the labor dispute which caused his unemployment.

Both Judge Hood and Judge Culpepper were of the opinion that a rehearing should be granted.

dled all complaints for longshoremen whether they were union or non-union.

The claimant Clifton Senegal was not a member of the union, could not attend union meetings, had no voice in the union organization, and did not receive strike benefits during the strike as the union members did. The claimant, who for years had earned his livelihood by working for this employer, was dependent on the local union for assignment to crews for employment by the employer. He reported to the union hall for this purpose, and whether he was selected for inclusion in a crew was dependent entirely upon the business agent of the union. He turned over 5 per cent of his net earnings to the union as did all other longshoremen, for no reason that he knew of other than to have the privilege of obtaining employment with Lake Charles Stevedores, Inc., through the local union. He received the same wages for his work as union members, and knew that if a wage increase was given to the union members, he would receive the same increase. He made no attempt to cross the picket line during the strike, but took no part in the picketing. As a result of the strike all longshoremen, both union and non-union including the claimant, actually received the same increase in pay. Also, he participated in the welfare, vacation, and pension fund of the union, administered by labor and management, to which the employer's contribution was increased as a result of the strike.

The Board of Review in rejecting his claim for unemployment compensation benefits stated:

" * * * The truth of the matter is that in relation to his employment with Lake Charles Stevedores, claimant was working on a permit from [the] local union and was governed by all the Rules and Regulations of said union. He has derived wage increase benefits in the past when [the] local has gone on strike, and he stands to gain the same benefit as a result of the present strike."

The facts we have set out above are substantially the same as those found by the Board of Review. The question presented under these facts is whether the claimant is disqualified for unemployment compensation benefits because he either (1) was "participating in" or (2) was "interested in" the labor dispute which caused his unemployment, within the meaning of these words in the statute.

The district court held the claimant to be disqualified for the reason that he was "interested in" the labor dispute. We are in full accord with this conclusion because the outcome of the strike would affect this non-union employee as well as the striking union employees. The claimant, who was governed by rules and regulations of the union, received the same wages as union longshoremen and knew that if a wage increase was given as a result of the strike, he would receive the same increase, and as

a result of the strike he actually received the same increase in wages as union members. He was a participant in the union's welfare and pension fund, the employer's contribution to which was increased as a result of the strike.

Under these salient facts the claimant was "interested in" the labor dispute which caused his unemployment, within the meaning of R.S. 23:1601(4), and is consequently disqualified to receive unemployment compensation benefits. In our view, therefore, the Court of Appeal erred when it held that Senegal was not "interested in" the labor dispute because he had no voice in the dispute and no voice in the calling of the strike which caused his unemployment. This very narrow interpretation of the phrase "interested in" actually has the effect of merging "interest" into "participation". We consider that the Legislature intended for "interested in" to have a meaning different from and broader than "participating in", and hence the Court of Appeal's interpretation cannot be valid.

The Louisiana Employment Security Law requires the employer to pay substantial sums into a fund from which unemployment compensation benefits are paid. The employee contributes nothing to this fund. Avoiding placing an employer in a position of being compelled by statute to subsidize a strike undoubtedly was one of the reasons which prompted the Legislature to disqualify those who are participating in or interested in the labor dispute, and we consider that a broad disqualification was intended by those categories.

It is not our intention to hold, nor should our opinion be construed to mean, that every worker who is unemployed on account of a labor dispute is interested in that dispute. Such a holding would effectively write out of the statute the exceptions to the labor dispute disqualification, and we do not intend such a distortion of the legislation. The question of interest will be determined by the facts and circumstances of each case, and the burden is on the employee to prove that he comes within the exceptions to disqualification by showing that he is neither participating in nor interested in the dispute.

For the reasons assigned the decree of the Court of Appeal is annulled and set aside, and the judgment of the district court is reinstated and made the judgment of this court.