286 So.2d 423 (1973)
ELMER CANDY CORPORATION
v.
ADMINISTRATOR OF EMPLOYMENT SECURITY et al.
No. 9526.
Court of Appeal of Louisiana, First Circuit.
November 12, 1973.
Rehearing Denied January 4, 1974.
Wm. F. Banta, New Orleans, and Iddo Pittman, Jr., Hammond, for appellant.
Marion Weimer, Baton Rouge, for Employment Security.
Before LANDRY, ELLIS and PICKETT, JJ.
PICKETT, Judge.
This is an appeal by Elmer Candy Corporation from an adverse judgment by the trial court in sixteen consolidated judicial review proceedings. These consolidated proceedings initially arose out of claims *424 filed individually by sixteen employees of appellant, Elmer Candy Corporation, for unemployment insurance benefits with the Division of Employment Security, Department of Labor of the State of Louisiana, which disqualified said employees (sometimes hereinafter referred to simply as "claimants") for unemployment compensation benefits because of claimants' participation in a strike or labor dispute at the plant of appellant.
The record discloses that the claimants were members of the Union of Allied and Technical Workers of America, District #50, (Union). The Union and the appellant, while negotiating a new contract, reached an impasse in their negotiations and after an affirmative strike vote by the Union members, a strike was called, and picket lines were established on May 23, 1972 at appellant's plant. The strikers did not report for work after May 23, 1972, but participated in the picket activities through and including August 30, 1972, on which date another negotiating session was held between the Union negotiating committee and representatives of appellant. But no agreement was reached. On that date, Union officials reported to the striking membership that they had been permanently replaced, after which the claimants did not participate in picket duty; and then filed claims for unemployment benefits, which claims were denied as previously stated.
The Claimants timely filed a notice of appeal to the Appeals Referee who, in a hearing conducted on October 12, 1972, upheld the action of the Agency in holding the claimants were not entitled to unemployment compensation benefits because of their participation in a strike or labor dispute.
An appeal was then taken by the Claimants to the Board of Review of the Division of Employment Security, and the Board reversed the decision of the Appeals Referee. In its decision, the Board of Review gave as its findings of fact and opinion as follows:

"EVIDENCE
"The evidence shows that the Referee, during the course of the hearing, allowed Mr. Roland Waguespack, one of the claimants, to testify in his own behalf after all parties had agreed that Bernice Helg and E. Wilda Green, would testify in behalf of all appellants.
The evidence shows that the employees of this company are represented by Local Union #13790, District 50, Allied and Technical Workers of America and Canada. The Union and the company were negotiating a new contract. Proceeding reached an impasse. The Union voted to, and went on strike. Picket lines were established at approximately 3:00 p. m. on May 23, 1972. The claimant did not report for work thereafter. The claimant is a member of the Union and participated in picket activities through and including August 30, 1972. On August 30, 1972, a meeting was held between the Union negotiating "committee and company representatives with a federal mediator in attendance. During this meeting, the Union stated that, if and when the dispute was settled, they wanted all striking workers to be immediately reinstated to employment.
The employer, through their spokesman, Mr. William Banta, Attorney, stated to the Union committee that the company did not intend to reinstate the striking employees because the company had replaced the strikers and did not plan on discharging, or otherwise terminating their replacements. They further stated that the only way they would reinstate the striking employees, would be if any openings occurred, or through employment attrition. Also, during the course of this meeting, the company stated that there were some employees who, in the opinion of the employer, had engaged in misconduct on the picket line and would never be reinstated. The company refused to identify the accused employees to the Union committee. On that date, after the negotiating session ended, the Union Officials, who were on the negotiating *425 committee for the Union, reported to the membership that they had been permanently replaced by the company. After this date, the claimant did not participate in picket duty and then filed a claim for unemployment benefits and registered for other employment. The evidence further shows that after this date, several of the employees, who had been replaced and who sought other employment elsewhere, have gone to work on other jobs."

"OPINION
"R.S. 23:1601(4) provides that a claimant shall "be disqualified for any week with respect to which the Administrator finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment, or other premises at which he is or was last employed; but such disqualification shall not apply if it is shown to the satisfaction of the Administrator that he is not participating in or interested in the labor dispute which caused his unemployment.
The Board finds that the Referee erred when he allowed Mr. Waguespack to testify in his own behalf, since all parties had agreed that the claimants, Bernice Helg and E. Wilda Green, would testify in behalf of all appellants. Therefore, this Board must decide the case of Roland Waguespack separately and issue its decision on the merits of Mr. Waguespack's testimony.
After carefully reviewing all of the testimony and evidence in this case, it is clear to this Board that the claimant was on strike and did, in fact, assist on the picket line from May 23, 1972 to August 30, 1972, approximately 14 weeks. The Board further finds that this claimant did not seek other employment nor did the claimant apply for unemployment benefits, because said claimant was still considered an employee of the company. However, on August 30, 1972, the claimant was notified, through the Union representative, that the company had replaced the claimant on a permanent basis and had no intention of reinstating the claimant when the strike was settled, unless there was an opening, or through attrition. Therefore, causing the employer-employee relationship to be "severed effective that date.
The Board of Review further finds that because of the employer replacing the employee, and notifying the employee through a legally authorized representative, that she had been permanently replaced and they had no intention of reinstating the claimant, the claimant was no longer an employee of this company and, in fact, was on indefinite layoff status.
The Board of Review further finds that at this time, the claimant's interest in or participation in this labor dispute at the claimant's former place of employment ceased, as work was no longer available to the claimant.
We, therefore, conclude that when the employer replaced the employee he did, in fact, bring about the claimant's unemployment.
Due to the aforementioned reason, the Board of Review must conclude that the claimant is not guilty of participation in the labor dispute as of August 31, 1972.
IT IS ORDERED that the decision of the Appeals Referee be reversed and the disqualification assessed under Section 1601(4) of the Louisiana Employment Security Law, be removed as of August 31, 1972."
Thereafter, appellant, the employer, filed this suit bearing Docket No. 41382 in the 21st Judicial District Court for the Parish of Tangipahoa of the State of Louisiana, for a judicial review of the proceedings of the Board of Review of the application of Margaret Hughes. The appellant, also, filed actions bearing Docket Numbers 41,383 through 41,397, in the same Court for a judicial review of the proceedings of the Board of Review of the applications for unemployment benefits by each of the other claimants. All of these cases were *426 consolidated for the purpose of trial. From an adverse judgment by the Lower Court, the employer has appealed.
The portion of the Louisiana Employment Compensation Law applicable to the resolution of the issues in this case is LSA-R.S. 23:1601(4), which provides:
"An individual shall be disqualified for benefits:
* * *
"(4) For any week with respect to which the administrator finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment, or other premises at which he is or was last employed; but such disqualification shall not apply if it is shown to the satisfaction of the administrator that he is not participating in or interested in the labor dispute which caused his unemployment. * * *"
Margaret Hughes and the other claimants became unemployed because of a labor dispute between appellant and the Union of which the claimants were members. That dispute resulted in a strike at appellant's plant where they were employed. The claimants actively participated in picket activities. It readily appears under the provisions of the foregoing statute that as long as the claimants' unemployment was due to the labor dispute they were disqualified for unemployment benefits; and that in order to qualify for such benefits it was incumbent upon them to show to the satisfaction of the administrator that they were not participating in or interested in the labor dispute which caused their unemployment. The provisions of the Louisiana Employment Security Law cited above clearly provides that the burden of proving a lack of disqualification for unemployment benefits is imposed upon the employee. This court so held in Brown v. Brown, 158 So.2d 305 (La.App., 1963), as follows:
"Our careful consideration of the applicable statute as a matter of first impression, impels the conclusion the clear import thereof is to place the burden of proof upon the employee seeking unemployment benefits. In effect the statute provides an individual is disqualified for benefits during any week in which his employment results from a labor dispute but such disqualification shall be ineffective and without application if it be shown he is neither participating in nor interested in the labor dispute which caused his unemployment. It would appear the legislature therefore intended disqualification to ipso facto result from unemployment caused by a labor dispute unless and until the affected employee adduced proof that he is not participating therein or interested in the outcome thereof. No other conclusion appears justifiable or logical in view of the terminology appearing in the statute. The same interpretation has been accorded similar statutes in Nebraska and Pennsylvania. See Borchman Sons v. Carpenter (1958) 166 Neb. 322, 89 N.W.2d 123; Oluschak v. Unemployment Compensation Board of Review (1960) 192 Pa.Super. 255, 159 A.2d 750."
The Louisiana Supreme Court in Senegal v. Lake Charles Stevedores, 250 La. 623, 197 So.2d 648 (1967) likewise held:
"The burden is on the employee to prove that he comes within the exceptions to disqualification by showing that he is neither participating in nor interested in the dispute."
The question presented under the facts found by the Board of Review is whether the claimants are disqualified for unemployment benefits either because they participated in, or were interested in, the labor dispute which caused their unemployment after August 30, 1972.
The Board of Review found that the claimants were members of the Union; and that on May 23, 1972, the Union members voted for, and went on strike. The claimants actively participated in picketing their employer's plant until August 30, *427 1972, on which date a meeting was held between the Union negotiating team and representatives of the appellant. The Union stated that, if and when the dispute was settled, they wanted all striking workers to be immediately reinstated to employment. But the jobs claimed by the strikers were occupied by workers hired by appellant during the strike as permanent replacements, obviously in order to continue operations. The appellant declined to discharge or otherwise terminate their replacements. However, the Board of Review reported that the spokesman for appellant said: "* * * the only way they would reinstate the striking employees would be if any openings occurred, or through employment attrition." The evidence before the Board of Review shows that active picket duty was not engaged in after that date. However, there is no evidence that the strike was terminated, or that there was no other participation by the claimants in the labor dispute. There is no evidence that the claimants terminated their Union membership thereafter. The evidence shows the claimants did not report for work after May 23, 1972. There is no evidence that either of the claimants applied for work after the August 30, 1972 meeting. During the August 30, 1972 meeting, the spokesman for appellant stated that some of the employees, in the opinion of the employer, had engaged in misconduct on the picket line and would never be reinstated. The employer refused to identify the accused employees. Hence, we are not informed whether any of the claimants are accused of misconduct on the picket line.
Under the facts found by the Board of Review, it concluded that the claimants interest in, or participation in, the labor dispute ended as of August 31, 1972; and that the claimants' employment ended as of that date because they had been permanently replaced. The Board ordered the decision of the Appeals Referee reversed and the disqualification assessed under R. S. 23:1601(4) removed as of August 31, 1972.
Both the Appeals Referee and the Board of Review found that the Union of which the claimants are members had taken an affirmative strike vote and established a picket line at the appellant's plant on May 23, 1972; and found that the claimants had actively participated in picket activities through August 30, 1972. Thereafter, the Board of Review concluded that on August 30, 1972, the claimants participation and interest in the labor dispute ceased because work was no longer available to them; and that the claimants were no longer employees of the appellant because they had been permanently replaced. There is no evidence that any of the claimants were discharged by the appellant, their employer. The legal conclusion of the Board of Review contradicts the well established Federal law that strikers retain their status as employees and must be reinstated upon application as openings arise. In the case of National Labor Relations Board v. Fleetwood Trailer Co., Inc., 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614, the U. S. Supreme Court said:
"It was clearly error to hold that the right of the strikers to reinstatement expired on August 20, when they first applied. This basic right to "jobs cannot depend upon job availability as of the moment when the applications are filed. The right to reinstatement does not depend upon technicalities relating to application. On the contrary, the status of the striker as an employee continues until he has obtained `other regular and substantially equivalent employment.'"
It is readily apparent that under the well established provisions of the Federal Labor Law that the claimants were entitled to reinstatement if jobs became available. However, there is no evidence that any of the claimants made any effort to be reinstated if jobs became available. Their right to be reinstated could only be defeated if the employer could show "legitimate and substantial business justifications." National Labor Relations Board v. Great Dane Trailers, 388 U.S. 26, 34, 87 S.Ct. 1792, *428 1798, 18 L.Ed.2d 1027. We conclude the Board of Review was in error in finding the employer-employee relationship of the plaintiff and claimants was terminated on August 30, 1972.
The Board of Review found that the claimants ceased picketing appellant's plant after August 30, 1972. But the Board made no finding that the claimants ceased to participate in the labor dispute in any other way. In fact, the Appeals Referee found in the hearing held by it on October 12, 1972, that negotiations and picket activities were still in progress as of the date of the hearing.
If it be conceded that the claimants ceased active participation in the labor dispute on August 30, 1972, we are still confronted with the question of whether the claimants were "interested in" the labor dispute which caused their unemployment within the meaning of R.S. 23:1601(4), when they made application for unemployment benefits. In this case, we have no evidence that the claimants did anything other than discontinue picketing activity to disassociate themselves from a strike which they originated and actively participated in to and including August 30, 1972. They did not resign from the Union and did not apply for reinstatement. As long as they were members of the Union, they would have either been benefited or injured by any subsequent contract the Union might make with the appellant. Hence, as Union members, it could not be said that they were not interested in the labor dispute that they had originated, and which caused their unemployment. Senegal v. Lake Charles Stevedores, Inc., 250 La. 623, 197 So.2d 648.
After a careful consideration of the record, and taking into consideration the findings of fact and the opinion of the Board of Review, we feel that the claimants have failed to sustain the required burden of proof by showing that they were not participating in, or interested in, the labor dispute which caused their unemployment at the time they made application for unemployment benefits.
For the reasons assigned, the judgment of the lower court sustaining the decision of the Louisiana Board of Review of the Department of Employment Security is annulled and set aside and the decision of the Appeals Referee for the Department of Employment Security is reinstated and made the judgment of this Court, costs to be assessed according to law.
Reversed.