370 So.2d 1327 (1979)
PIGGLY WIGGLY OF SPRINGHILL, INC., Plaintiff-Appellant,
v.
Joseph GERACE, Administrator, Division of Employment Security, et al., Defendants-Appellees.
No. 13843.
Court of Appeal of Louisiana, Second Circuit.
May 1, 1979.
Nelson & Achee, Ltd. by Frank M. Dodson, and Bobby S. Gilliam, Shreveport, for plaintiff-appellant.
Marion Weimer, Baton Rouge, for defendants-appellees.
Before BOLIN, MARVIN and JONES, JJ.
MARVIN, Judge.
The plaintiff employer appeals from a judgment affirming the defendant agency's ruling that plaintiff's employees who once were participants in a labor dispute (a strike) were entitled to unemployment compensation benefits after they unconditionally offered to return to work when the labor *1328 dispute was no longer in active progress. R.S. 23:1601. We affirm.
Plaintiff, operator of a grocery store in Springhill, was negotiating for a new collective bargaining agreement with the union as bargaining representative of plaintiff's employees. Before any agreement was formally executed some of plaintiff's employees filed with the National Labor Relations Board a petition to hold an election to decertify the union as bargaining agent. With possible decertification pending, plaintiff declined to execute a new agreement. About 30 employees then went on strike between August 3 and October 26, 1976. Plaintiff notified its striking employees that replacements would be hired in two weeks. The striking employees did not respond to plaintiff's notice and plaintiff hired some replacement employees.
On October 15, 1976, the NLRB held the election which resulted in decertification of the union. On October 21, the union representative formally sought to have the NLRB set aside the election results. The union representative, on behalf of all striking employees, informed the plaintiff, verbally on October 22 and in writing on October 26, that the striking employees were unconditionally offering to return to work. On November 24, 1976, plaintiff received formal notice from NLRB that the union had withdrawn its objections to the election and that the final result was decertification of the union as bargaining representative.
In the meantime, several of the striking employees returned to work. Twenty-one of plaintiff's employees filed for unemployment compensation benefits with the defendant agency. The agency found that these applicants were disqualified for benefits under R.S. 23:1601(4) during the time the labor dispute in which they either were interested or were participating was in active progress. The agency further found that the labor dispute ceased to be in active progress on November 24, 1976, and held that the applicants were qualified for UC benefits after that date.[1]
The plaintiff employer contends that subsection one and subsection four disqualify the applicants for UC benefits because:
the employees involved in the strike left their employment without good cause (1601(1)), and
that the labor dispute in which these applicants were either participating or were interested, continued in active progress because of a boycott of plaintiff's grocery store by union employees at the International Paper Company mill in Springhill, the area's then largest employer (1601(4)).
The National Labor Relations Act, 29 U.S.C.A. 152(3), is clear in its provision that an employee whose work has ceased as a consequence of a labor dispute continues to be an employee if he has not obtained a regular and substantially equivalent employment. N. L. R. B. v. Fleetwood Trailer Co., Inc., 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967). See also Elmer Candy Corp. v. Administrator of Employ. Sec., 286 So.2d 423 (La.App. 1st Cir. 1973), which held that the replacement of a striking employee does not terminate the employer-employee relationship.
Our interpretation of 1601(1) is that the word left is intended to cover those *1329 situations where an employee quits, or voluntarily leaves or resigns, his employment. Then the question as to eligibility for UC benefits concerns whether the employee's leaving his employment was with or without good cause. We have found no Louisiana case where the 1601(1) good cause issue has been discussed or applied when the circumstances concerned a strike or labor dispute. Under 1601(4) an individual whose unemployment is caused by a labor dispute in active progress remains an employee under federal law and he may be eligible for UC benefits if he shows to the satisfaction of the defendant agency that he is not participating in or interested in the labor dispute. In any event, 1601(4) is the special subsection of 1601 which is to be particularly applied in such cases.[2]
Thus the critical issues:
Was there a labor dispute (?) in active progress (?) after notice to the employer that the union was decertified as the bargaining representative and after the union employees unconditionally offered to return to work?
If so, were the applicants either interested in or participating in the labor dispute?
In Elmer Candy, supra, the employees began picketing in May but ceased picketing on August 30. Finding these employees disqualified for UC benefits because there was
". . . no evidence that [they] did anything . . . to disassociate themselves from a strike which they originated. . . They did not resign from the Union and did not apply for reinstatement. As long as they were members of the Union, they would have either been benefited or injured by any subsequent contract the Union might make with the [employer] * * *" (286 So.2d at p. 428),
the court held the employees failed to show they were not "interested in" the labor dispute as required by 1601(4) to become eligible for benefits. This finding strongly implies that the Elmer Candy labor dispute continued in "active progress". The term "interested in" a labor dispute perhaps is much broader than the term "participating in" a labor dispute for a 1601(4) disqualification. Senegal v. Lake Charles Stevedores, Inc., 250 La. 623, 197 So.2d 648 (1967). But see National Gypsum Co. v. Administrator, Dept. of Emp. S., 313 So.2d 230 (La.1975), discussed infra.
But unlike Elmer Candy, plaintiff's employees did apply for reinstatement (to return to work), and once the union was decertified as bargaining representative, the union would not have been able to negotiate for or to sign a labor contract with the employer. Plaintiff suggests that its business had been affected because posters and perhaps other notices about the strike were displayed and circulated among the employees of the International Paper Mill in Springhill, who comprise 75 percent of plaintiff's customers. The agency, however, found that the claimants were not promoting or participating in a boycott to any extent that could be construed as a continuation of a labor dispute beyond November 24 and that the active progress of the labor dispute ceased on that date. These findings are supported by the record particularly because on or before that date the union was in fact decertified, pickets had been withdrawn, and the claimants had unconditionally offered to return to work. We think it is also significant that the claimants did not receive strike benefits from the union after they unconditionally offered to return to work and that some of the striking employees were allowed to return to work.
In National Gypsum Co. v. Administrator, Dept. of Emp. S., supra, the Supreme Court *1330 recognized its earlier Senegal holding "that the purpose of the labor dispute disqualification was not to subsidize a strike," and said that
". . . [W]e think the more reasonable interpretation of the disqualification to be that unemployment due to `a labor dispute in active progress' includes only unemployment resulting from labor disputes in which the employee himself actively engages by refusing to work. We are reinforced in this interpretation by the further provision of the labor-dispute disqualification to the effect that an employee of a separate department shall not be deemed disqualified if he is unemployed because of a labor dispute within another department of the same premises.
"In our opinion, the administrative board therefore correctly explained the purpose of the labor-dispute disqualification and why it is not applicable to the present claimants, here unable to work through no fault of their own: `The Unemployment Compensation Act is not intended to encourage idleness or labor disputes nor to force an employer to contribute benefits to help finance his employees' disputes with him. Only an employee prevented from working through no act of his own should be entitled to unemployment benefits.'
"We thus regard the disqualification provision of La.R.S. 23:1601(4) as an expression of the public policy that the State remain neutral in labor disputes. The award or denial of unemployment compensation should not be available as a weapon to either labor or management, as they seek to resolve their differences.
"When employees are on strike, we have held that, by reason of the statutory policy, they cannot receive unemployment benefits. Senegal v. Lake Charles Stevedores, Inc., 250 La. 623, 197 So.2d 648 (1967). We hold today that, for similar reasons, the act was not intended to enforce a lock-out by the employer by denying unemployment benefits to employees who are available for work, but who are denied it by their employer. To deny compensation under such circumstances would not only be to deny benefits to employees unemployed through no fault of their own, but would be to add a sanction not contemplated by law to conduct by the employer designed to withhold subsistence from his workers and their families in order to force them to accept the employer's terms.
"We thus do not believe that a labor dispute is in active progress, insofar as disqualification for unemployment benefits is concerned, when the employees are exercising their legal right through peaceful negotiation to bargain for what they deem to be better working conditions." 313 So.2d at 233
The strike at plaintiff's store was called because plaintiff refused to continue bargaining or to execute a labor contract after the petition for a decertification election was filed with NLRB. Our view of a federal authorities is that certification of a bargaining representative, once made, is presumed to continue, and that a naked showing of the filing of a decertification petition is insufficient to relieve the employer of its obligation to continue bargaining, since the petition establishes nothing more than that it was signed by at least 30 percent of the employees. See Allied Industrial Workers v. NLRB, 155 U.S.App. D.C. 112, 476 F.2d 868 (1973); Retired Person's Pharmacy v. NLRB, 519 F.2d 486 (2d Cir. 1975); N. L. R. B. v. Windham Community Memorial Hospital, 577 F.2d 805 (2d Cir. 1978). International Ladies' Garment Workers' Union v. N. L. R. B., 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961), where no certification had occurred, is not contrary.[3]
*1331 Here a labor dispute (the strike) was in active progress with the claimants participating. The dispute and the claimants' participation ceased when the claimants unconditionally offered to return to work at a time when the union had agreed that it was no longer serving or eligible to serve as the bargaining representative of the employees of the plaintiff-employer. As in the determination of interest, the determination as to when a labor dispute ceases is to be made by the facts and circumstances of each case. See Senegal, supra.
R.S. 23:1601(4) expressly provides that the disqualification of the claimant is "for any week" in which it is found that the unemployment is caused by a labor dispute in active progress. Conversely, even though once disqualified for this reason, the disqualification is not permanent or indefinite, as in the case of 1601(1) good cause disqualification. If the labor dispute is not yet in active progress, as in National Gypsum, or as here, if it ceases to be in active progress, and particularly where there is a finding that the claimant has ceased to be either participating or interested in the dispute and offers unconditionally to return to work, the disqualification "shall not apply," according to 1601(4).
The agency findings are supported by sufficient evidence and we find no error of law. R.S. 23:1634. At appellant's cost, judgment below is
AFFIRMED.
NOTES
[1] R.S. 23:1601(1) and (4), discussed herein, read as follows:

"An individual shall be disqualified for benefits:
"(1) If the administrator finds that [the individual] has left his employment without good cause connected with his employment. Such disqualification shall continue until such time as the claimant (a) can demonstrate that he has been paid wages for work equivalent to at least ten times his weekly benefit amount following the week in which the disqualifying act occurred and (b) has not left his last work under disqualifying circumstances.
* * * * * *
"(4) For any week with respect to which the administrator finds that [the individual's] unemployment is due to a labor dispute which is in active progress at the . . . establishment . . . at which he is or was last employed; but such disqualification shall not apply if it is shown to the satisfaction of the administrator that [the individual] is not participating in or interested in the labor dispute which caused his unemployment. . ."
[2] In other states where this argument has been made it has been answered as we answer here. See Annotation, "Construction and application of provisions of unemployment compensation or social security acts regarding disqualification for benefits because of labor disputes or strikes", 28 A.L.R.2d 287, as supplemented, and particularly T. R. Miller Mill Company v. Johns, 261 Ala. 615, 75 So.2d 675 (1954). The essence of these cases is that the good cause disqualification cannot be applied in true labor dispute disqualification cases because that would involve looking into the respective merits of the dispute. See further comment in footnote three.
[3] If the 1601(1) issue of good cause for leaving employment is allowed to overlap into the labor dispute disqualification, state courts, applying unemployment compensation laws, would be required to look into the merits of the labor dispute to determine if the employer or the employee was justified in (had good cause for) their respective actions during the dispute. Then we would be wading in forbidden unfairlabor-practice waters which are exclusively under the NLRA.