ALFORD, Judge.
The defendants appeal the trial court judgment in favor of the plaintiff employer, Associated Grocers, Inc., disqualifying claimants from receiving unemployment compensation benefits until each claimant makes an unconditional offer to return to work. Defendants are the administrator of Louisiana’s Department of Employment Security (agency) and thirty-three claimants who, as employees of the plaintiff and union members, became involved in an active labor dispute on June 7, 1983, when they went on strike and set up picket lines at plaintiff’s warehouse.
On November 30, 1983, an appeals referee, without a hearing, upheld an agency determination that the claimants were disqualified from receiving unemployment benefits from June 7, 1983, to June 20, 1983, because of a labor dispute. He also upheld the agency’s finding that the labor dispute ended on June 20, 1983, thereby making the claimants eligible to receive unemployment compensation benefits. The plaintiff then appealed that decision to the Board of Review of the Division of Employment Security, which after a hearing before the same appeals referee, affirmed the referee’s determination. The plaintiff thereafter sought judicial review. The trial court reversed the Board of Review’s determination, finding that, as a matter of law, the labor dispute and the claimants’ interest in said dispute had not ended on June 20, 1983, and that the claimants had not proven their disinterest in an ongoing labor dispute. From that judgment, the *451 defendant agency and the claimants have taken this appeal.
The applicable statute, LSA-R.S. 23:1601(4) provides, in pertinent part, that an individual shall be disqualified from benefits:
For any week with respect to which the administrator finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment, or other premises at which he is or was last employed; but such disqualification shall not apply if it is shown to the satisfaction of the administrator that he is not participating in or interested in the labor dispute which caused his unemployment.
The record is clear that all parties agree that a labor dispute began at plaintiffs warehouse when the claimants refused to work and started picketing on June 7, 1983. The appeals referee determined that the labor dispute and the claimants’ interest therein ended on June 20, 1983, finding that the plaintiff severed the employer-employee relationship by notifying the strikers that they were being permanently replaced and, if they desired to return to work, jobs would be offered on a work-available basis. The date of June 20, 1983, was selected by the referee based on the testimony of Robert Alleman, an agency employee, who stated that a representative of the plaintiff had advised that all strikers would be replaced if they did not report to work by that date. Testimony by three of the claimants, as representatives of all the claimants, indicated that they were indirectly advised by newspaper articles and television reports and by their union representative that they had been permanently replaced.
In his report, the appeals referee noted that the labor dispute itself was not settled, and that the union continued to picket as of the hearing date. The three representative claimants admitted that they walked the picket line after June 20, 1983, but stated that they stopped picketing when they filed for unemployment benefits. Moreover, the record shows that leaflets were still being passed out by union membérs at the establishments of plaintiffs customers, urging a boycott of those grocery stores that continued to do business with the plaintiff.
After reviewing the record of the hearing, the Board of Review agreed with the appeals referee, concluding that the claimants were eligible for benefits since they “were no longer involved in a labor dispute after they were permanently replaced by the employer.” The trial court reversed the Board of Review’s decision, reasoning that the evidence did not show that all the workers had been permanently replaced as of June 20, 1983. The court pointed out that the record showed that some forty-nine of the striking employees offered to return to work after June 20, 1983, and were reinstated as late as December of 1983. Moreover, the trial court found that the labor dispute itself, complete with picket lines, was still continuing in February of 1984, at the time of the hearing. Therefore, the court determined that it was incumbent upon the claimants to prove that they were no longer participating in or interested in the ongoing labor dispute, and that said claimants failed to bear their burden of proving their disinterest. See Senegal v. Lake Charles Stevedores, Inc., 250 La. 623, 197 So.2d 648 (1967); Elmer Candy Corp. v. Administrator of Employ. Sec., 286 So.2d 423 (La.App. 1st Cir.1973). We agree.
As provided by LSA-R.S. 23:1634, our judicial review is limited to a determination of (1) whether the factual findings of the Board of Review are supported by sufficient competent evidence in the record and (2) whether the Board correctly applied the law to the factual findings. See Standard Materials, Inc. v. Adm’r, Div. of Empl., Etc., 401 So.2d 400 (La.App. 1st Cir.1981).
After reviewing the record of the instant case as a whole, we find that the trial court was correct in determining that the agency incorrectly applied the law. The claimants became unemployed because of a labor dispute. Even assuming that all the claimants were permanently replaced as of June 20, 1983, jurisprudence states that such *452 action does not constitute a cessation of the labor dispute or the claimants’ participation or interest in the dispute within the meaning of LSA-R.S. 23:1601 (4). See Elmer Candy Corp., 286 So.2d at 427, 428. Since the labor dispute itself had not ended, in order to obtain unemployment compensation benefits, it is incumbent upon the claimants to show that they were not participating in or interested in the labor dispute which caused their unemployment. Senegal, 197 So.2d at 651. The evidence in the record does not support the Board of Review’s finding of disinterest.
The record shows that, at the time of the hearing, the claimants were no longer picketing, but that they were still members of the striking union, that they had picketed until they sought unemployment benefits, that at least one of them still would not cross established picket lines, that some of them were still passing out leaflets encouraging a boycott of the plaintiff, and that they had not asked to be reinstated although they claimed to be available for work either at plaintiff’s establishment or elsewhere. The record also shows that there is no evidence that any of the claimants have been discharged by the plaintiff. In accordance with federal law, they continued to have the right to reinstatement upon application, as jobs became available. As expressed in Elmer Candy Corp., 286 So.2d at 428, “as Union members, it could not be said that they were not interested in the labor dispute that they had originated, and which caused their unemployment.” After a careful review of the record, we agree with the trial court that the claimants have not proven their lack of participation or interest in an ongoing labor dispute.
For the foregoing reasons, we affirm the judgment of the trial court in its entirety. Costs may not be assessed against the agency. LSA-R.S. 13:5112(D); LSA-R.S. 23:1548. Costs may not be assessed against the claimants in this case. LSA-R.S. 23:1692. Therefore, the costs are to be absorbed by the clerk of this court and the clerk of the trial court. Livingston Parish School Bd. v. State, 426 So.2d 246 (La.App. 1st Cir.1983).
AFFIRMED.