645 So.2d 779 (1994)
Harry ABADIE, Jr., et al.
v.
BAYOU STEEL CORPORATION and Honorable Gayle F. Truly, Secretary of Labor.
No. 94-CA-322.
Court of Appeal of Louisiana, Fifth Circuit.
October 25, 1994.
Writ Denied February 3, 1995.
*780 Louis L. Robein, Jr., Metairie, for plaintiff/appellant, Harry Abadie, Jr.
H. Mark Adams, Katy Kimbell Theriot, Jones, Walker, New Orleans, for defendant/appellee, Bayou Steel Corp.
Denise Ann Nagel, Virginia G. Benoist, Baton Rouge, for defendant/appellee, Louisiana Dept. of Labor.
Before WICKER, CANNELLA, JJ., AND JOHN C. BOUTALL, J., Pro Tem.
JOHN C. BOUTALL, Judge Pro Tem.
This case involves claims for unemployment compensation. The plaintiffs are employees of Bayou Steel Corporation. They filed suit in the 40th Judicial District to contest a determination by the Administrative Review Board that they were excluded from collecting benefits under La.R.S. 23:1601(4) as active members of a strike. Named as defendants in the suit were Bayou Steel and Honorable Gayle F. Truely, Secretary of Labor. The decision of the Review Board was affirmed by the trial court and both the plaintiffs and the Honorable Gayle F. Truely have appealed to this court for review. We likewise affirm the decision of the review panel.
The plaintiffs are employees of Bayou Steel Corporation and members of the United Steel Workers of America. These employees were working under a six year contract which expired on February 28, 1993. The union and the company failed to successfully negotiate a new contract and the union called a strike which began on March 21, 1993. All of the claimants herein have participated in the strike by refusing to return to work and/or walking the picket line.
In April of 1993, the employees filed their claims for unemployment compensation. Bayou Steel opposed the claims, alleging that claimants were disqualified from receiving benefits under La.R.S. 23:1601(2) (employee misconduct) and La.R.S. 23:1601(4) (employees who are actively participating in or who are interested in an ongoing labor dispute). On April 21, 1993, the Administrator made an initial determination disqualifying claimants from receiving benefits. Subsequently, on May 4, 1993, the Administrator issued a Non-monetary Determination which reversed his prior decision and found that the claimants were entitled to unemployment benefits.
Bayou Steel Corporation appealed and the matter was presented to Administrative Law Judge Dennis Dykes. After a hearing, he found that La.R.S. 23:1601(2) was inapplicable to this case. He further found that claimants were actively participating in an ongoing strike and therefore they were disqualified from receiving benefits under La. R.S. 23:1601(4).
*781 The claimants appealed to the Board of Review, which affirmed the decision of the Administrative Law Judge. The board articulated its findings of fact and applications of law as follows:
The claimants worked for the employer under a bargaining agreement between the employer and the United Steelworkers of America, AFL-CIO-CLC USWA) (hereafter referred to as "the union"). Most of the claimants worked the full six-year term of the agreement, March 1, 1987 through February 28, 1993.
Discussions regarding a new contract began January 15, 1993. A strike authorization vote was given by the union membership on February 24, 1993. The union notified the employer of the strike authorization vote. The employer made preparations in case a strike occurred; those preparations included planning to hire replacements for striking employees.
The contract was to have expired on February 28, 1993; however, the union and employer agreed to two (2) extensions of the contract, through March 20, 1993. Negotiations continued; a settlement could not be reached.
March 19, 1993 the union and company met. The union refused to agree to another extension of the expiring contract; the union did agree to give the employer 48 hours notice of a called strike. Approximately two hours later, the union advised the employer that it would begin a strike on March 21, 1993.
March 20, 1993 the employer made a "last ditch" offer in an effort to avert a strike. They informed the union that if the offer was rejected by the membership, the employer would determine that an impasse had been reached and that the conditions of the March 19, 1993 offer would be imposed. The union bargaining committee, having been authorized by the membership vote on February 24, 1993, rejected the offer and advised the employer that the strike would proceed. An impasse was not declared.
The strike began March 21, 1993. All of the claimants have participated in the strike by refusing to return to work and/or by walking the picket lines.
Some of the union members did not go out on strike, but rather reported for work immediately as scheduled. Some of the union members who did initially participate in the strike by refusing to work, have since crossed the picket lines and returned to work. Approximately 122 strike replacement workers have been hired and are also crossing the picket lines to work.
The employer has not unilaterally imposed new working conditions. The employer is voluntarily adhering to the expired contract in rates of pay, benefit schedules, etc., on those workers who continue employment, union or not. Claimant Ferraro asserts that the employer is sub-contracting truck driver jobs (approximately 24 jobs affected) in violation of the expired contract.

OPINION
R.S. 23:1601(2) provides that an individual shall be disqualified for benefits if the Administrator finds that he has been discharged by a base period or subsequent employer for misconduct connected with his employment. Such disqualification shall continue until such time as the claimant (a) can demonstrate that he has been paid wages for work subject to the Louisiana Employment Security law or to the unemployment insurance laws of any other state or of the United States equivalent to at least ten times his weekly benefit amount following the week in which the disqualifying act occurred and (b) has not left his last work under disqualifying circumstances. In addition, if the administrator finds that such misconduct has impaired the right, damaged or misappropriated the property of, or has damaged the reputation of a base period employer, then the wage credits earned by the individual with the employer shall be cancelled, and no benefits shall be paid on the basis of wages paid to the individual by such employer.
R.S. 23:1601(4) For any week with respect to which the administrator finds that his unemployment is due to a labor dispute *782 which is in active progress at the factory, establishment, or other premises at which he is or was last employed; but such disqualification shall not apply if it is shown to the satisfaction of the administrator that he is not participating in or interested in the labor dispute which caused his unemployment. For the purposes of this Subsection, if separate branches of work which are commonly conducted as separate businesses in separate premises, are conducted in separate departments of the same premises, each such department shall be deemed to be a separate factory, establishment or other premises.
There is no testimony or evidence indicating that the claimants have been "discharged" from their employment. Rather, the record indicates that former "strikers" have returned to work with this employer. In accordance with federal law, they continue to have the right to reinstatement upon application, as jobs become available. National Labor Relations Board v. Fleetwood Trailer Co., Inc., 389 U.S. 375, 88 Sup.Ct. [S.Ct.] 543, 19 L.Ed.2d 614 (1967).
There is no testimony or evidence indicating that the claimants have "quit" their employment with Bayou Steel Corp., as alleged in their memorandum to the Board of Review. To the contrary, the claimants have provided written statements indicating that they are unemployed as a result of a labor dispute. This is substantiated by the testimony of Claimant Ferraro who stated "... we had no alternative but to go on strike ..." Further, the employer has received no notices of resignation, nor has the Department of Labor (agency) been advised by these claimants that they have subsequently "quit".
The Unemployment Act is not intended to encourage idleness or labor disputes nor to force an employer to contribute benefits to help finance his employees' disputes with him. Only an employee prevented from working through no fault of his own should be entitled to unemployment benefits. Thus, the disqualification provision of LSA-R.S. 23:1601(4) must be regarded as an expression of public policy that the State remain neutral in labor disputes. The award or denial of unemployment compensation should not be available as a weapon to either labor or management, as they seek to resolve their differences. See Piggly Wiggly v. Gerace, 370 So.2d 1327 (La.App. 2d Cir.1979).
The Louisiana Employment Security Law requires the employer to pay substantial sums into a fund from which unemployment compensation benefits are paid. The employee contributes nothing to this fund. Avoiding placing an employer in a position of being compelled by statute to subsidize a strike undoubtedly was one of the reasons which prompted the Legislature to disqualify those who are participating in or interested in a labor dispute, and we consider that a broad disqualification was intended by those categories. See Senegal v. Lake Charles Stevedores, Inc. [250 La. 623], 197 So.2d 648 (La.1967).
The burden is on the employee to prove that he comes within the exceptions to disqualification by showing that he is neither participating in nor interested in the dispute. See Senegal v. Lake Charles Stevedores, Inc. [250 La. 623], 197 So.2d 648 (La.1967).
In this case, the claimants refused to accept an extension of the expiring contract. An extension would have allowed them to continue working as they had for the prior six year period, while negotiations of a new contract continued. Rather, the claimants elected to strike. There has been no lockout, nor has there been an impasse.
Due to the aforementioned, it must be concluded that the claimants are unemployed as a result of a labor dispute in active progress at the premises at which they were last employed. Further, as the claimants continue in their refusal to cross the picket lines and their refusal to return to work, it must be concluded that these claimants are participating in and interested in the labor dispute. For these reasons, the claimants are not entitled to Unemployment Insurance Benefits.
These findings were affirmed by the 40th Judicial District Court. In its reasons for judgment, the trial court stated:

*783 Considering the Board's sufficiently supported findings that claimants' unemployment was due to the labor dispute in progress and that claimants have not shown that they are not participating in or interested in that labor dispute, and considering the plain language of the quoted law, and considering but notwithstanding the thorough and insightful arguments to the contrary by claimants and by the Secretary, this court concludes it has no alternative on judicial review but to affirm the Board's decision.
Both the claimants and the Department of Labor, through its Secretary, the Honorable Gayle F. Truely allege that the evidence is insufficient to support the decision of the Board of Review and that the decision is incorrect as a matter of law. Both further request that, in the alternative, this matter should be remanded for the taking of evidence on matters which occurred after the hearing before Administrative Law Judge Dykes. In addition, the Department of Labor argues that the present state jurisprudence violates state statutory and constitutional law; jeopardizes public policy and favors an exclusive remedy in favor of the employer against the employee.
At the onset, it is important to note the standard of review by which we are bound in matters of this kind. La.R.S. 23:1634 provides in part that "In any proceeding under this section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law."
There must be legal and competent evidence to support the factual findings on which the administrative determination turns. Banks v. Administrator of Dept. of Labor, 393 So.2d 696 (La.1981). Judicial review of the findings of the Board of Review does not permit the weighing of evidence, drawing of inferences, reevaluation of evidence or substituting the views of the court for that of the Board of Review as to the correctness of the facts presented. Dupont v. Blanche, 514 So.2d 286 (La.App. 5 Cir. 1987).
In this case, after a careful review of the record, we believe that the findings of the review panel are supported by sufficient evidence and, therefore, we are bound by these findings. Plaintiffs allege that company actions threatening new working conditions, reductions in pay and termination of an undisclosed number of employees for strike misconduct constituted a "lock out" thereby making them eligible for unemployment benefits. The Board of Review found, however, that these changes were not made and that the plant was currently working under the terms of the expired contract pending a resolution of the labor dispute, and the actions of Bayou Steel did not constitute a lockout.
Plaintiffs and the Department of Labor also argue that Bayou Steel's actions in hiring replacement workers for an indefinite time operates as a discharge of the striking employees, and makes them eligible for benefits. This argument was rejected by the First Circuit in Associated Grocers v. Adm'r of Employment Sec., 496 So.2d 450, 451-52 (La.App. 1 Cir.1986) writ denied 497 So.2d 1389 (La.1986):
After reviewing the record of the instant case as a whole, we find that the trial court was correct in determining that the agency incorrectly applied the law. The claimants became unemployed because of a labor dispute. Even assuming that all the claimants were permanently replaced as of June 20, 1983, jurisprudence states that such action does not constitute a cessation of the labor dispute or the claimants' participation or interest in the dispute within the meaning of LSA-R.S. 23:1601(4). See Elmer Candy Corp. [v. Administrator of Employment Security], 286 So.2d [423, 427-28 (La.App. 1 Cir.1973)]. Since the labor dispute itself had not ended, in order to obtain unemployment compensation benefits, it is incumbent upon the claimants to show that they were not participating in or interested in the labor dispute which caused their unemployment. Senegal, 197 So.2d [648, 651 (La.1967) ]. The evidence in the record does not support the Board of Review's finding of disinterest.

*784 The record shows that, at the time of the hearing, the claimants were no longer picketing, but that they were still members of the striking union, that they had picketed until they sought unemployment benefits, that at least one of them still would not cross established picket lines, that some of them were still passing out leaflets encouraging a boycott of the plaintiff, and that they had not asked to be reinstated although they claimed to be available for work either at plaintiff's establishment or elsewhere. The record also shows that there is no evidence that any of the claimants have been discharged by the plaintiff. In accordance with federal law, they continued to have the right to reinstatement upon application, as jobs became available. As expressed in Elmer Candy Corp., 286 So.2d at 428, "as Union members, it could not be said that they were not interested in the labor dispute that they had originated, and which caused their unemployment." After a careful review of the record, we agree with the trial court that the claimants have not proven their lack of participation or interest in an ongoing labor dispute.
In this case, plaintiffs likewise have failed to show that they are no longer participating in or interested in the ongoing labor dispute with Bayou Steel Corporation. We are in agreement with our brethren on the First Circuit and, therefore, we find no error of law in the ruling of the Board of Review and the affirmation of same by the trial court that the plaintiffs were actively involved in a labor dispute and were disqualified from receiving unemployment benefits pursuant to La.R.S. 23:1601(4).
Both appellants next request that should this Court fail to reverse the decision of the Board of Review and of the district court, this matter should be remanded for the taking of evidence concerning the actions of Bayou Steel after the original hearing in this matter. These actions, it is argued, show that Bayou Steel is not in good faith in these labor negotiations and, therefore, there is no bona fide labor dispute within the meaning of La.R.S. 23:1601(4).
Appellants argue that a remand is necessary because (1) the identities of the workers to be terminated for strike misconduct has been revealed by Bayou Steel; and (2) the National Labor Relations Board has charged Bayou Steel with serious "law violations" which reflect issue of Bayou's good faith or lack thereof in negotiating with plaintiffs. We find that these allegations are not such as to warrant a remand in this case. There is no evidence to suggest that, at this time, any claimant has been terminated from employment and, therefore, all the claimants are employees actively involved in or interested in the labor dispute within the meaning of La.R.S. 23:1601(4). Second, any alleged violations of the National Labor Relations Act are separate and distinct from the issue of whether the employees herein are entitled to unemployment compensation benefits and therefore are not relevant. Third, the claimants have made a claim based upon the facts at a particular time. If these facts have changed now, they form the basis for another claim. Otherwise, this claim would never be subject to final adjudication.
As stated supra, the Department of Labor also argues that existing Louisiana jurisprudence operates to violate state constitutional and statutory law and is in derogation of public policy. Basically, the department alleges that allowing the company to hire replacement workers, without granting the employees the right to collect unemployment benefits, tips the "balance of power" in favor of the company and unfairly prejudices the employees.
In National Gypsum Co. v. Administrator, Dept. of Emp. S., 313 So.2d 230, 233 (La.1975), the Louisiana Supreme Court articulated the public policy behind La.R.S. 23:1601(4): "We thus regard the disqualification provision of La.R.S. 23:1601(4) as an expression of the public policy that the State remain neutral in labor disputes. The award or denial of unemployment compensation should not be available as a weapon to either labor or management, as they seek to resolve their differences." We adhere to this policy, pointing out, however, that the facts of National Gypsum and of this case are markedly different.
*785 It has also been recognized that "... the intent of LSA-R.S. 23:1601(4) is undoubtedly to avoid placing an employer in a position of being compelled by state statute to subsidize a strike since the employer is required to pay substantial sums into a fund from which unemployment benefits are paid." Cities Service v. Admin., La. Dept. of Emp., 383 So.2d 1315, 1318 (La.App. 3 Cir.1980); Mascair v. Blanche, 484 So.2d 190 (La.App. 5 Cir.1986).
We recognize that strikers who are disqualified from receiving benefits may be placed in a difficult financial position pending the resolution of an ongoing labor dispute. However, we do not believe that this hardship creates a violation of state statutory or constitutional law.
For the above discussed reasons, the findings of the Board of Review and the judgment of the 40th Judicial District Court upholding those findings are affirmed. All costs of this appeal are assessed against plaintiffs/appellants. See La.R.S. 13:5112(D).
AFFIRMED.